K-C Land Company, Inc., a Florida corporation v. Commissioner.
K-C Land Co. v. Commissioner
Docket No. 67050.
United States Tax Court
T.C. Memo 1960-35; 1960 Tax Ct. Memo LEXIS 257; 19 T.C.M. (CCH) 183; T.C.M. (RIA) 60035; February 29, 1960
*257 Amos E. Jackson, Esq., 312 Royal Palm Way, Palm Beach, Fla., for the petitioner. Robert O. Rogers, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in corporation income tax for the taxable years ended December 31 in 1950, 1951 and 1953 in the respective amounts of $2,277.58, $5,892.22 and $12,073.33. These deficiencies were based upon a determination that operations under the corporate name involving the purchase and sale of lands, an oil and gas lease and corporation stock and distribution of the proceeds constituted the transaction of business as a corporation, or as an association taxable as a corporation. This determination is assigned as error, the petitioner alleging that it was solely a title-holding entity and that the income involved belonged to others. Some facts are stipulated. The corporation filed tax forms with the collector or director of internal revenue at Jacksonville, Florida. Findings of Fact The stipulated facts are incorporated by reference. The petitioner was a Florida corporation with its principal place of business at Palm Beach, Florida. It was organized *258 February 1, 1950. It filed income tax forms (Form 1120) for the taxable period February 1, 1950 to December 31, 1950, and for the calendar years 1951 and 1953. The form for the taxable period in 1950 was unsigned and bore the notation. "This corporation holds title for property owned by others and has no income, no expenses, nor any assets." The form for 1951 was signed by W. T. Anderson, V.P. and bore the notation "This corporation holds title for property owned by others and has no income, no expenses, and no assets." The form for 1953 stated the principal business as "Holding Co.," was signed by W. T. Anderson as secretary, as the person preparing the form, and stated "K-C Land Co., Inc. had no income nor expenses to my knowledge. This was a holding Co. only for benefit to others." The certificate of incorporation provides, in part "ARTICLE II. "The general nature of the business to be conducted, transacted, carried on and pursued by this corporation shall be to buy, own, hold, improve, rent, lease, sublease, sell, and otherwise acquire and dispose of and manage real and personal property; to sell, buy, build, construct, own, hold, lease, and encumber buildings *259 and warehouses of any and all kinds; to act as agent or broker for any person, persons, firms, partnership or corporation in the sale, holding, improving, renting, leasing, encumbering or otherwise handling real, personal, or mixed property of any and all kinds; to buy, take, own, hold, sell and deal in and dispose of stocks, bonds, notes, mortgages, choses in action and all other kinds of negotiable paper or security, and to act as agent or broker in the handling of same and in the handling of other personal property; to mortgage and pledge any or all of the property in which this corporation may from time to time own or have an interest; to issue bonds and to borrow money and to secure the same by mortgage, deed of trust, or other appropriate instrument; to engage in a general mercantile business for the purpose of handling any and all kinds of merchandise or other personal or mixed property; to buy the stock of this corporation or of any other corporation; to do each and every thing necessary, suitable, or proper for the accomplishment of any of the purposes or the attainment of any one or more of the objects herein enumerated, or which shall at any time appear conducive to or expedient *260 for the protection or benefit of this corporation; and in general, to carry on any other lawful business whatsoever in connection with the foregoing or which is calculated, directly or indirectly, to promote the interest of the corporation or to enhance the value of its properties." The corporation was authorized to issue 200 shares of common stock, of no par value. One hundred and ninety-eight shares were issued to Emerson Cook, one share to Kenneth Cook and one share to W. T. Anderson. No money was paid in for the stock issued. Emerson Cook signed an escrow directive relative to his stock, which provided "WHEREAS, it is the desire and intention of the undersigned that his 198 shares of the above referred to stock shall never become a part of the estate of the undersigned by reason of death or disability; "NOW, THEREFORE, in consideration of the sum of One Dollar ($1.00) receipt of which is hereby acknowledged, it is directed and agreed by the undersigned that said stock held by him is endorsed in blank, each and every of said shares, and same are deposited and held in Safety Deposit Box 438, located in Safety Deposit Vault in the Guaranty Bldg. office at West Palm Beach, *261 Florida, to which box only Newman T. Miller and Wareing T. Miller have access, and the said Cook further directs and agrees that said stock shall not, and it is his wish, desire and intention that said stock shall not, in case of his death or other disability become any part of the assets of his said estate, but that in the event of death or other disability, said stock shall immediately be transferred and delivered to Kenneth Cook, who shall thereupon be forthwith elected President of K-C LAND COMPANY, INC. It is further directed and agreed that this action taken by the undersigned is being taken by the said Cook so that there will never be an opportunity in case of said Cook's death or disability, for any property held by the K-C LAND COMPANY, INC. in trust to be transferred, conveyed, sold, mortgaged or otherwise disposed of by the said Company except by direction of the parties for whom said property is held." Ranch Management, Inc. was a Florida corporation, having its principal place of business in Palm Beach. During the taxable years it was beneficially owned in equal shares by W. T. Anderson, James T. Landon, and Wareing T. Miller for himself or for a law partnership, consisting *262 of himself, Newman T. Miller and Robert S. Hewitt. The petitioner maintained bank accounts in the First National Bank in Palm Beach and the Indian River Citrus Bank, Vero Beach, Florida. Emerson Cook and W. T. Anderson were authorized to sign checks. In March 1950, the petitioner acquired title to certain real property located in Martin County, Florida, for consideration of $25,217. In May 1950, the petitioner acquired title to certain real property located in Indian River County, Florida, for a consideration of $102,174.75. The petitioner assumed a first mortgage of $35,000 on this property and granted a second mortgage of $16,400. In July 1950, the petitioner conveyed title to a part of the Martin County property for $1,200. In September 1950, the petitioner conveyed logs cut from the Indian River property for $151.35. In October 1950, the petitioner acquired by assignment title to an oil and gas lease in Dade County, Florida, referred to as the Grossman Hammond lease, for a consideration of $4,800. Cost of recording the assignment was $5. In November 1950, the petitioner conveyed title to the remainder of the Martin County property for a consideration of $38,867.50. *263 Expenses of sale amounted to $3,968.55. In December 1950, the petitioner acquired title to 100 shares of common stock of The Ocean Corporation for $15,000. The certificate was issued in the name of the petitioner. In June 1951, the petitioner conveyed title to the Indian River County property for $128,000. Expenses of sale amounted to $1,234.80 and the seller was required to provide title insurance costing $959.63. During the year 1953 the Grossman Hammond oil lease reverted to the lessor because of expiration of the lease term. Under date of May 15, 1950, the corporation executed a "Declaration of Trust," relating to the Martin County property, stating that it is the holder of the record title to such property, that it received title in contemplation of a Joint Adventure Agreement (described below), that it had no beneficial interest in such property, that its interest is limited to a Management Agreement (described below), that it held record title solely as trustee for Emerson Cook Company, The Browe Co., and Joe Hart as to 50 per cent and Ranch Management, Inc. as to 50 per cent, and that it would transfer to such parties on demand that portion of their interests as may *264 then appear. The Joint Adventure Agreement was executed at the same time by Emerson Cook Company, The Browe Co., Joe Hart, by his attorney-in-fact, and Ranch Management, Inc. It recited that K-C Land Company, Inc. had executed a Declaration of Trust, as to certain property, and stated that the parties had agreed to share the profits or losses from such property, that all proceeds shall be applied first to payment of costs and expenses and thereafter divided in the proportions stated, that proceeds shall be transferred to K-C for convenience of operation and management only, that taxes and other expenses are to be paid by K-C for convenience of operation only and that when any party desired to dispose of his or its interest the other parties should have first refusal to buy. There were provisions to apply in event of the death of Joe Hart. On the same date, the same parties and K-C Land Company, Inc. also executed the Management Agreement referred to above which provided that K-C shall retain possession of the described property, shall operate and manage it for the other parties, shall render any and all services necessary to proper management and operation, furnish semiannual reports *265 including accounting and operating statement and balance sheets and shall always be subject to the direction and control of the other parties in and about the operation and management of the property. Similar agreements were executed with reference to the Indian River County property, the Grossman Hammond lease and The Ocean Corporation stock. Petitioner actually performed no managerial functions and was paid no managerial fees. The income which the respondent ascribes to the petitioner is the profit on the purchase and sale of the properties described above. Opinion The respondent contends that the various profits realized from sales of property to which the petitioner held title were taxable income to it. The petitioner contends that it was organized solely to hold title to various properties for the convenience of those persons who supplied the funds for purchase of such properties. The respondent argues that the corporation was organized for a business purpose, engaged in substantial business activities, derived gain from business operations and distributed that gain to its stockholders. It was created to provide central control for handling transactions and therefore *266 served a business purpose. The argument is that the corporation was formally incorporated, stock was issued, by-laws were adopted, minutes kept, books maintained and tax returns filed, bank accounts used, contracts executed, mortgages assumed, money borrowed and repaid, operating expenses paid, and title to property received and conveyed. A corporation may not be disregarded, for tax purposes, if the intention of the creators was that it have a substantial business function, or if it actually engages in business; on the other hand it may be disregarded in the absence of such an intention or activity. Jackson v. Commissioner, 233 F. 2d 289 (C.A. 2, 1956), affirming 24 T.C. 1 (1955). See Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). In John A. Mulligan, 16 T.C. 1489 (1951) (appeal dismissed) a corporation held title to real property which belonged to an estate of which the petitioner was administrator. It held title for convenience, undertook no activities of its own and was not a conduit for collection of rental income or payment of expenses which were handled through a separate bank account of the estate. We there *267 held that the corporation was not taxable on the income from the property. In State-Adams Corporation, 32 T.C. 365 (1959) (on appeal, C.A. 2) a corporation was organized to hold title to real estate subject to a long-term lease where difficulties were anticipated concerning the devolution of title and subsequent ownership by aliens and minor beneficiaries. The stock was issued to the trustee of the trust owning the property and later was distributed to the heirs according to their interests. The corporation received title to the real property and gave a promissory note to the trustee as a device for paying over to the trustee or beneficiaries the income derived from the property. We concluded that the corporation did not exercise a substantial business function or actually engage in business and that the income involved belonged to the stockholders and not to the corporation. In Bartell Hotel Co., 32 T.C. 311 (1959) Acq. I.R.B. 1959-32, 6, we held that a corporation which held title to a hotel building which was operated by another corporation was not taxable on the earnings of the operation. In Worth Steamship Corporation, 7 T.C. 654 (1946) *268 Acq. C.B. 1946-2, 5, the taxpayer corporation was formed by two of three joint adventurers to hold title to and operate a steamship for a monthly fee. It reported as income the fee, but not the earnings of the steamship distributed to the joint adventurers. The parties there executed a joint adventure agreement, an operating agreement and a declaration of trust similar to those adopted by the joint adventurers in the present case. We held that the corporation was not the beneficial owner of the ship and was not taxable on the income from the ship's operations. The K-C Land Company was organized primarily as a convenience to receive, hold and transfer title to properties in which the several joint adventurers were interested. The testimony is to the effect that Joe Hart was in Chicago, and Landon, who represented Hart under a power of attorney, was State Hotel Commissioner and was travelling most of the time. Anderson also travelled 80 per cent of the time. Some of the investors were in Jacksonville and others in the West Palm Beach area. The joint adventurers would have had difficulty getting signatures of all and the corporation was formed by some of them to facilitate transfer *269 of title. No money was paid in for the stock and the shares issued were merely for qualifying purposes. The joint adventurers agreed upon certain purchases and furnished the money for acquiring the properties. For convenience bank accounts were opened in the name of the corporation, the money advanced was deposited and used for the purchases agreed upon. Expenses of purchase or sale were paid out of these accounts. When properties were sold, the proceeds were deposited, expenses paid and net profits distributed to the joint adventurers according to their interests. These were not distributions to stockholders. Stockholder Kenneth Cook was not one of the investors and several of the investors were not stockholders. The joint adventurers did not intend to do business as a corporation or to form a corporation to engage in business. Had they so intended they would have taken stock. The respondent argues, in the alternative, that the investors associated themselves for the conduct of a business enterprise and constituted an association taxable as a corporation. The facts do not support this conclusion. The joint adventurers participated as partners rather than through an association. *270 There was no centralized management, transferable shares evidenced by certificates or other indicia of doing business as an association. Cf. Morrissey v. Commissioner, 296 U.S. 344 (1935). The joint adventurers agreed upon an investment or sale and supplied the funds. Cook or Anderson, as agent for the group, carried out the transactions using the petitioner as a repository of title. The joint adventurers followed the procedure sanctioned in Worth Steamship Corporation, supra, a case in which the respondent had acquiesced. The petitioner held title to each property subject to a specific trust agreement stating the rights of the joint adventurers in the property. It is clear from the evidence that the petitioner had no beneficial interest in the properties and did not engage in any business activity other than as described in our Findings of Fact. This was not substantial business activity. The income derived from the sales of the properties belonged to the joint adventurers and not to the petitioner. Worth Steamship Corporation, supra.
Decision will be entered for the petitioner.