The GREGG COMPANY OF DELAWARE, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 2, Docket 23621.

United States Court of Appeals Second Circuit.

Argued Nov. 7, 1956.

Decided Dec. 17, 1956.

Kenneth W. Moroney, New York City, for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The petitioner, The Gregg Company of Delaware, appeals from a decision of the Tax Court, 23 T.C. 170, 1954, that the amounts paid by petitioner to its parent corporation on its so-called "Fifty-Year 4% Income Notes" were not deductible "interest * * * on indebtedness" within the meaning of Section 23(b) of the Revenue Acts of 1934, 1936, and 1938, 26 U.S.C.A. (I.R.C.1939) § 23(b). Petitioner asserts that these Notes were evidence of a valid indebtedness and therefore it was entitled to a tax deduction for the payment of interest thereon.

We believe the Tax Court was so clearly correct in its disposition of this case that we would affirm on the opinion of Judge Murdock, 23 T.C. 170, were it not that subsequent to his opinion we decided an appeal from that court in Kraft Foods Co. v. Commissioner, 2 Cir., 1956, 232 F.2d 118, and the petitioner here relies upon our opinion in that case to support its contention that the Tax Court erred.

The involved facts in the present appeal are set forth in detail in the Tax Court opinion. Many of these facts were stipulated by taxpayer and Commissioner. The Fifty-Year 4% Income Notes, as will hereinafter appear, have some of the characteristics of a conventional debt issue and some of the characteristics of a conventional equity issue. When such "hybrid" securities are involved, the problem of characterization is one of considering each case on all of its facts. See John Kelley Co. v. Commissioner (Talbot Mills v. Commissioner), 1946, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278. Therefore, despite the detailed statement of facts in the Tax Court opinion, we must summarize the history behind the issuance of the taxpayer's Fifty-Year 4% Income Notes;

and, in the light of that history, examine the nature of the transaction evidenced by them in order to realistically understand the meaning and purpose of the actual provisions contained therein.

Taxpayer is a Delaware corporation, incorporated in 1933. Prior to its incorporation the Gregg family had been actively engaged in the business of building and selling railway cars and equipment in various parts of the world, primarily in Latin America. In 1903 the Gregg Company, Ltd., a New York corporation, hereinafter called "New York," was organized as the original corporate entity engaged in this business. During the period from 1929 to 1932 all the manufacturing operations of New York were transferred to a wholly-owned subsidiary, Societé Gregg d'Europe, a Belgian corporation, organized in 1927. New York, however, continued to conduct all the selling operations; to own the patents and inventions, the inventories, work in process, and finished goods; and to exercise entire control over the merchandise and the operations of the Belgian corporation. In 1933, since all of the business of the enterprise, as well as the manufacturing, was conducted outside the United States, it was decided to organize a foreign corporation to carry on the operations of New York. The Tax Court found that this was done to avoid United States income taxes assessed against New York upon profits made elsewhere. The taxpayer, The Gregg Company of Delaware, petitioner here, was organized on October 18, 1933 as the first step in the execution of this intention. On October 31, 1933, New York transferred substantially all of its assets, including its foreign assets, to taxpayer in exchange for taxpayer's entire authorized capital stock consisting of 2,000 shares of capital stock without par value and for $1,000,000 face value of taxpayer's Fifty-Year 4% Income Notes. Thereupon, New York distributed these Income Notes to the stockholders of New York in the same proportions in which they held New York common stock. The assets so acquired by taxpayer from New York had an actual value of at least $1,318,000, New York retaining some assets of an undisclosed value. After taxpayer was organized, and before the transaction with New York of October 31, 1933, a corporation was organized on October 24, 1933 under the laws of the Republic of Panama. On November 1, 1933, the day after the transaction between New York and taxpayer, taxpayer transferred to the Panama corporation, Gregg Car Company, Ltd., all of the assets so acquired from New York, except $2,000 in cash, being assets having an actual value of at least $1,316,000,—and received in exchange therefor the entire authorized issue of 4% non-cumulative voting preferred stock of the Panama corporation, having an aggregate par value of $1,000,000. Therefore, if all went well, taxpayer would receive income of $40,000 annually by its receipt of dividends from Panama, and would pay out $40,000 annually to the stockholders of New York by the payment proportionately to each of them each year of a 4% return on $1,000,000.

The "Fifty-Year 4% Income Notes" issued by taxpayer were to mature February 1, 1984. They bore interest from January 1, 1934, at a rate not to exceed 4%, payable on February 1 of each succeeding year. The interest was payable "out of the surplus net earnings and income for the preceding calendar year but only if and to the extent that the surplus net earnings and income of the Company shall suffice for such payment; such interest shall not be cumulat've and no part of the interest hereon for the payment of which the surplus net earnings and income for any interest year shall be insufficient shall be a charge upon or shall be paid from the income of any other year." Current expenses of the business, taxes, insurance charges, other interest charges, and such sums as the board of directors in their discretion might set aside as a reserve for any purpose or contingency were to be deducted from the gross earnings for the interest period in determining the surplus net earnings applicable to the pay-

ment of interest. The amounts available up to 4% were to be paid promptly "unless in the judgment of the Board of Directors, the net quick asset position of the Company shall render it undesirable to make such payment," but any earned interest thus withheld was to accumulate and be payable without interest when the Board might determine or at maturity if not paid prior thereto. The determination of the Board of Directors as to the surplus net earnings applicable to the payment of interest was to be final and conclusive. The Notes were subject to redemption in whole or in part at any time prior to maturity upon ten days notice. They were to become due and payable immediately in the event of liquidation or insolvency of the company. They were also transferable. They contained no provisions subordinating payment of principal to claims of general creditors, they were not secured, and they had no voting privileges.

Panama paid the petitioner $40,000 in 1935 as the first dividend on the preferred stock and made like payments in each year through 1939. The petitioner paid out all of that amount, as received, to the holders of its "Income Notes." In 1939 $319,100 par value of the petitioner's "Income Notes" was retired at par for cash and, significantly, Panama retired an equal amount of its preferred stock. The occasion was the sale by Louis D. Gregg and members of his family of all their interests in the Gregg companies. Thereafter, for each of the years 1940 through 1949, except 1945 and 1946, Panama paid to the petitioner $27,236 as dividends on preferred stock. It made no payments for the years 1945 and 1946. The petitioner for each of the years 1940 through 1944 paid to the holders of its Income Notes $27,233.76; made no payment in 1945 and 1946, and paid to Income Noteholders $27,233.77 for the years 1947 through 1949.

In support of this appeal, the petitioner relies heavily on the recent decision by this court in Kraft Foods Co. v. Commissioner, 2 Cir., 1956, 232 F.2d 118. But that case is clearly distinguishable from the one at bar for there "the debentures were simple in form and contained an unconditional promise to pay the principal amount" with interest at a fixed rate (6%) per annum. Kraft Foods Co. v. Commissioner, supra, at page 121. There the parties "objectively manifested their intent" to create a creditor-debtor relationship between two pre-existing "going concerns" by the clear language of the debentures themselves.

■ Here, however, since we are confronted with "hybrid" securities, issued by the alleged debtor contemporaneously with its creation, it is necessary to consider the individual provisions of the Income Notes and the history of their issuance and subsequent treatment in order to determine whether they represent an actual indebtedness or, in reality, equity capital. See Mertens, Law Of Federal Income Taxation § 26.10. Cf., e. g., Jordan Co. v. Allen, D.C.M.D. Ga.1949, 85 F.Supp. 437, 443–445.

Particularly significant in this context are the provisions of the Income Notes relating to the payment of interest. No fixed rate of interest is provided; in fact, there is not even a minimum rate of interest, but only a maximum of 4% per year. Even this indeterminate amount is to be paid only if there be surplus net earnings and income for the preceding year. In determining that surplus, the directors may deduct, in addition to all expenses incurred in the conduct of the business, such sums as they "in their absolute discretion set aside as a reserve for any proper purpose or contingency." Furthermore, the interest is non-cumulative in the event it is not earned in any given year. As stated above, no interest at all was paid in 1945 or 1946. If there should be amounts available for payment as interest even then payment can be withheld if the directors believe that the net quick asset position of the Company makes it "undesirable to make such payment." Very significantly, any earned amounts thus withheld are to be paid out at the discretion of the Board of Di-

rectors, but without interest for the time during which payment is withheld.

The facts found by the Tax Court clearly demonstrate that the petitioner was formed in 1933 as an integral part of an overall plan whereby United States corporate income taxes on profits earned outside the country by the Gregg activities were to be eliminated. In addition, taxation of the petitioner also was to be avoided by offsetting its earnings with an equal amount of "interest" payments to the noteholders.

The Notes were not issued for new capital obtained by the Greggs from outside sources, nor for borrowed money. They were issued in exchange for the assets of New York, which, like the petitioner, was a Gregg family corporation. Since the Notes were distributed to the shareholders of New York in proportion to their equity interests in that company, the relative interests in the Gregg businesses of each New York stockholder was not changed. In 1939, when the taxpayer's Notes held by Louis Gregg and his family were retired, the Panama company also retired an equal amount of its preferred stock, thus illustrating the correlation between the taxpayer's Income Notes and the equity interests in the Gregg enterprises.

The provisions of the Income Notes and the history of their issuance and subsequent treatment clearly support the Tax Court conclusion that they were never evidences of indebtedness, but actually represented disguised equity capital. The "interest" payments were in reality dividends, and hence the petitioner is not entitled to any deductions therefor under Section 23(b).

## II.

Petitioner, as an alternative ground for reversal, claims that since the Tax Court characterized it as a "mere conduit to receive dividends," it was not engaged in any business activity and therefore should not be regarded as a taxable entity under the rule of Moline Properties, Inc., v. Commissioner, 1943, 319 U.S. 436, 63 S.Ct. 1132, 87

L.Ed. 1499. This contention, which was not even urged in the proceedings below, can be disposed of readily. The petitioner was originally formed in order to effectuate a tax-free reorganization, the purpose of which was found by the Tax Court to be the elimination of a corporate tax on the foreign profits of the Gregg operations. The reorganization was accomplished, and the petitioner served continuously as a holding company from that date forward, reporting as its corporate income the dividends it received from the corporate stock it held. Thus the petitioner has performed the functions for which it was created, and those functions are sufficient to constitute a "business activity" for purposes of taxation. See National Investors Corp. v. Hoey, 2 Cir., 1944, 144 F.2d 466, 468.

Order affirmed.