**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**
v.
**STATE-ADAMS CORPORATION,**
**Respondent.**
**No. 37, Docket 26100.**

United States Court of Appeals
Second Circuit.

Argued Oct. 13, 1960.

Decided Oct. 31, 1960.

Kenneth E. Levin, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice,

Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for petitioner.

H. Gilmer Wells, of Cadwalader, Wickersham & Taft, New York City (Arnold J. Zurcher, Jr., and Charles S. P. Barker, New York City, on the brief), for respondent.

Before CLARK, MAGRUDER, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

Petitioner asserted deficiencies amounting to $88,558.18 in the income and excess profit taxes due from respondent corporation for the year 1951. The Tax Court held that respondent was not a corporation for tax purposes and therefore owed no tax. 32 T.C. 365. This petition for review followed.

In its corporate income tax return for 1951, respondent, following its practice since its incorporation in 1933, reported no net income. After reporting the receipt of rent in the sum of $140,000 respondent deducted $984.32 as "legal services and collection charges," and deducted the remaining $139,015.68 as "interest" paid on notes held by the shareholders. The Commissioner determined that this "interest" was in reality a dividend—a conclusion which respondent does not contest. But respondent argues that it was a mere dummy for the holding of title, and therefore its separate corporate existence should be disregarded for federal tax purposes.

Respondent was incorporated under the laws of Illinois on September 26, 1933, for the purpose of holding title to certain land at State and Adams Streets in Chicago. This "State-Adams" property was then owned by Mrs. Frances Sheldon Whitehouse as sole trustee of the "Sheldon Trust," of which she was sole income beneficiary. On Mrs. Whitehouse's death the land would be distributed to her descendants *per stirpes*. In 1933, Mrs. Whitehouse was 81 years of age and had six children and several minor grandchildren. Two of these children were aliens and were prohibited by Illinois law from owning real estate for more than six years. There was the further possibility that part of the ownership of the State-Adams property would become vested in minor beneficiaries. To avoid these difficulties which might arise on the death of Mrs. Whitehouse, the family attorney caused the incorporation of the respondent. Mrs. Whitehouse, as trustee of the Sheldon Trust, transferred title of the State-Adams property to the new corporation in return for all its capital stock. At the time, the property had been leased to The Fair department store for a term of 79 years, at annual rentals which increased periodically from $125,000 for 1915–20 to $140,000 for 1950–94. This lease was transferred to respondent in exchange for its promissory note payable to Mrs. Whitehouse as trustee, the interest on the note being equivalent to the amount of rent received from The Fair. At the time of incorporation, Mrs. Whitehouse was advised by her attorney that the "new arrangement" would in no way affect the present crediting of her account "with a sum equal to the total rent from the property."

Before respondent's incorporation the rental income from The Fair was transmitted to the Bank of Montreal, New York, which credited the funds to Mrs. Whitehouse's account as trustee. After respondent was incorporated, The Fair made its checks payable to respondent. But pursuant to a duly authorized resolution of respondent, The Fair caused the checks to be transmitted to the Bank of Montreal and credited directly to Mrs. Whitehouse's account, as had been done previously. Upon the death of Mrs. Whitehouse in 1944, the stock in respondent and the note became the property of her six children, but the general collection process continued substantially as before. The Bank received the rentals and forwarded them directly to the accounts of the shareholders. Since the interest payments were intended to exhaust the rental income, appropriate corporate action was taken to refund the

debt by notes at a higher interest rate when, under the terms of the lease, the rental income increased. At times the amount paid out as interest exceeded the amount due on the notes.

The lease under which these rental payments were made was a "net lease," under which all the usual duties of ownership and management were imposed upon the lessee. Respondent, organized to hold the title to the land and the lease, did not engage in general activities unconnected with this purpose. Thus it did not maintain an office (other than the required Illinois statutory office) for the transaction of business. It had no bank account. Its mailing address was at all times in care of the attorneys for the Whitehouse family. It had no expenses except for the service fee charged by the Bank of Montreal, small legal fees paid to the family attorneys, and Illinois franchise taxes. Its only source of income was the rental checks which, after payment of the above expenses, were distributed by the Bank directly to the shareholders, as stated above.

Hence consistent with its purpose the only activities required of respondent were such as at once to preserve its existence and to provide for collection of the rent and its distribution to the shareholders. So at all times it executed the necessary documents to this end with the required corporate formalities. It held a stockholders' meeting in 1933 for the purpose of organization and election of directors, and another in 1947 for ratification of the lease by the then stockholders as requested by counsel for the lessee, The Fair. It held some ten directors' meetings, the directors and officers consisting of certain trust beneficiaries who served without compensation and of the family attorneys who were compensated for their legal services. Minutes were kept of these meetings; and these showed choice of new directors to fill vacancies, modifications in some details as to the payment instructions on transfer of a note by the holder to her children, and refunding of the notes at a higher interest rate as the

lease rental increased. In 1935 respondent was dissolved by the Superior Court of Illinois for failure to pay franchise taxes, but the dissolution decree was vacated in 1938 when the attorneys learned of it and paid the delinquent taxes. Respondent filed income tax returns as above stated and has carried on the present proceedings in the Tax Court and here in its corporate name. There can be no question but that respondent is and has been a valid corporation under state law.

Respondent asserts, however, that the question whether it was a bona fide corporation under state law is not dispositive of the question whether it should be recognized as a corporation for federal income tax purposes. We are referred to Moline Properties v. C. I. R., 319 U.S. 436, 439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499, where the Supreme Court stated that a corporation will be treated as a separate taxable entity so long as the purpose of incorporation "is the equivalent of business activity or is followed by the carrying on of business by the corporation." In National Investors Corp. v. Hoey, 2 Cir., 144 F.2d 466, 468, this Court, per L. Hand, J., took this statement to mean "that to be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term 'corporation' will be interpreted to mean a corporation which does some 'business' in the ordinary meaning; and that escaping taxation is not 'business' in the ordinary meaning." It may be noted that in both cases decision went against the taxpayer.

We think that respondent, having full beneficial ownership of the land and collecting the rent therefrom, engaged in business under the principles above enunciated. This is not a case where the corporation was a mere nominee, powerless to act with respect to the land other than with consent of the beneficial owners. Had the corporate officers and directors determined to sell the land, or to reinvest in other property, the sharehold-

ers who had been receiving the rent could not have complained. This is not a case where income belonging to the shareholders was received in form by the corporation. The income belonged to the corporation, and was paid directly to the shareholders only because this suited the purpose for which the corporation had been established. Thus the corporation was organized for a specific purpose which required for its fulfillment a separate legal entity, more than a sham or "shell"; and over the years it carefully satisfied every legal requirement to achieve its purpose.

Respondent relies chiefly on Paymer v. C. I. R., 2 Cir., 150 F.2d 334, 336, where this Court, at the instance of the taxpayer, disregarded the separate existence of a corporation created to hold title to real estate. There title to certain real estate was conveyed by a partnership to the Westrich Realty Corp. for the purpose of concealing the true ownership from creditors. The conveyance was made "with the express understanding that the corporation is only to hold title to the property, the beneficial interest and profits to be in the individual stockholders and the management and control of the property exclusively theirs." No attempt was made even to assign the leases existing on the real estate to the corporation. Here respondent was the complete beneficial owner of the property and the lease. The difference between respondent and Westrich is the difference between a beneficial owner of income-producing property and a mere nominee for furnishing a name for the land records. In reality Paymer is nothing more than a restatement of the fundamental rule that income from real estate held in the name of a nominee will be taxed to the beneficial owner, not to the nominee.[1] We do not understand United States v. Brager Bldg. & Land Corp., 4 Cir., 124 F.2d 349, to involve anything more than another application of this rule.

O'Neill v. C. I. R., 2 Cir., 170 F.2d 596, certiorari denied 336 U.S. 937, 69 S.Ct. 747, 93 L.Ed. 1096, does not hold to the contrary. There an individual taxpayer created two wholly owned corporations to hold title to real estate, so that the taxpayer could deal with it without requiring his wife's signature on deeds or other documents. The corporations received some rent, and some proceeds from sale of real estate. This Court there held that the corporation was not sufficiently distinct an entity from its sole shareholder to permit advances made by the shareholder to the corporation to be treated as debts. But the corporate entity was not disregarded, because the advances were given effect as capital contributions. The question whether a corporation is to be treated as a separate taxable entity is distinct from the question whether advances made by a shareholder to that separate entity are loans or capital contributions. Nor is Jackson v. C. I. R., 2 Cir., 233 F.2d 289, in point. That case involved intermediate corporations in a holding company structure —a problem not here present. The instant case would be analogous to Jackson only if the shareholders of respondent formed a new corporation and transferred their stock and notes in respondent to that new corporation in exchange for its stock. The new corporation would then be comparable to the Belgrade corporation in the Jackson case.

Furthermore, it is to be noted that in Jackson, as in O'Neill and most of the other cases cited, the corporate entity was disregarded at the instance of the Commissioner. As is shown by this Court's decision in Gregg Co. of Del. v. C. I. R., 2 Cir., 239 F.2d 498, certiorari denied 353 U.S. 946, 77 S.Ct. 825, 1 L.Ed. 2d 856, made soon after Jackson, the

---

1. It is significant that in the Paymer case the court held another similar holding company, Raymep Realty Corp., Inc., taxable as a corporation because it had made a single loan, assigning its lease rights as security. While respondent stresses the absence of such circumstance here, it is obvious that this is without significance here where the corporation had no need or use of a loan to fulfill its corporate purpose.

Commissioner, to prevent unfair tax avoidance, has greater freedom and responsibility to disregard the corporate entity than a taxpayer, who normally cannot be heard to complain that a corporation which he has created, and which has served his purpose well, is a sham. In the Gregg case, taxpayer was a subsidiary of a New York corporation whose business operations were conducted wholly outside the United States. The parent, to eliminate the United States corporate tax on these foreign operations, decided to form a corporation in the Republic of Panama to carry on the foreign operations. In a tax-free reorganization the parent transferred its operating assets to the taxpayer in exchange for all the taxpayer's stock. The taxpayer then transferred these assets to the Panama corporation in exchange for preferred stock. Thus the taxpayer was an intermediate holding company not substantially different from the Belgrade corporation in Jackson. In Jackson the Commissioner was permitted to disregard Belgrade's corporate existence, even though that existence served the taxpayer's purpose of segregating out for the wife, as sole shareholder of Belgrade, all future profits. But in Gregg, 2 Cir., 239 F.2d 498, 502, when the taxpayer argued that its separate existence should be disregarded because it was a "mere conduit to receive dividends," and therefore was not engaged in business activity, this Court stated: "The petitioner was originally formed in order to effectuate a tax-free reorganization, the purpose of which was found by the Tax Court to be the elimination of a corporate tax on the foreign profits of the Gregg operations. The reorganization was accomplished, and the petitioner served continuously as a holding company from that date forward, reporting as its corporate income the dividends it received from the corporate stock it held. Thus

the petitioner has performed the functions for which it was created, and those functions are sufficient to constitute a 'business activity' for purposes of taxation."

Hence we conclude that respondent has performed the functions for which it was created, and these functions are sufficient to constitute a business activity for purposes of taxation. Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406.[2] It follows that the decision of the Tax Court must be reversed and the proceedings remanded to that court for the assessment of deficiencies. It is so ordered.

2. When Congress has desired to give taxpayers the benefit of using the corporate form without paying a corporate income tax, it has known how to do so specifically and directly. Compare the election as to their taxable status given "certain small business corporations" by I.R.C. 1954, subchapter S, §§ 1371–77, added by Pub.L. 85–866, Tit. I, § 64(a), Sept. 2, 1958, 72 Stat. 1650.