CHARLES A. AND DONNA JOYCE EAGLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eagle v. Commissioner
Docket No. 5585-78.
United States Tax Court
T.C. Memo 1982-332; 1982 Tax Ct. Memo LEXIS 407; 44 T.C.M. (CCH) 119; T.C.M. (RIA) 82332; June 16, 1982. *407 Roy A. Golden, for the petitioners. Jack Forsberg, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge:* Respondent determined a deficiency in the amount of $2,519 in petitioners' Federal income tax for 1972. The only issue for our decision is whether the income and deductions generated by the ownership and operation of Winona Apartments are attributable to petitioners individually or to Fortieth Corporation, their wholly-owned corporation. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein. Petitioners Charles A. Eagle *408 (Mr. Eagle) and Donna Joyce Eagle (Mrs. Eagle), husband and wife, resided in Polk County, Iowa. They timely filed their joint Federal income tax return for 1972 with the Internal Revenue Service Center at Kansas City, Missouri. In February 1964, petitioners, together with Kenneth and Sharlie Eaton, formed Fortieth Corporation (the corporation). The articles of incorporation provided that the corporation had unlimited power to engage in any lawful business. On February 21, 1964, the corporation purchased the Winona Apartments for $6,000 from Battani Corporation. A warranty deed reflecting the conveyance was filed in the Polk County Recorder's office on February 24, 1964. The apartments were the corporation's only asset during the year in issue. In the fall of 1964 petitioners acquired the Eatons' interest in the corporation. Thereafter, petitioners were the sole owners and officers of the corporation. Mr. Eagle served as president and treasurer; Mrs. Eagle was vice-president and secretary. In 1973, the corporation sold the Winona Apartments. In 1975, the corporation was dissolved. The parties stipulated that the principal functions of the corporation were to insulate *409 the Eagles from any personal liability that might arise in connection with the ownership and operation of the apartments and to hold record ownership. Explaining his purpose in forming the corporation, petitioners' attorney, Richard L. Rick, testified, "Well, originally, it was my feeling that we would have a simpler matter to process, because there were two families involved, if we held the title to the real property in, if you will, a street name, a nominee name, rather than putting it in their individual names. It, for the record, at least, or on the record, would make it easier to deal with the property." After petitioners purchased the Eatons' interest, the corporation functioned to segregate rental income and expenses from petitioners' personal accounts, Mr. Rick stated. The corporation had its own books and maintained its own bank account. It issued no stock and filed no corporate income tax returns. From 1964 through 1973, the corporation, through its officers, was actively engaged in the operation of the Winona Apartments. It received rental income and paid rental expenses; it paid the real estate taxes on the apartments; it conveyed its equity in the apartments to Battani *410 Corporation under a real estate installment contract. Shortly thereafter, the interest it conveyed reverted to it by default. In addition, the corporation served as co-maker on a note made in consideration for a loan of $25,000 to Mr. Eagle which was secured by the Winona Apartments. From 1964 through 1972, petitioners reported income and expenses incurred in connection with the operation of the Winona Apartments on their joint federal income tax return, Schedule E. In 1972, they reported a net loss of $7,893.42. [2]
*411 During 1972 deposits in the Fortieth Corporation checking account totaled $20,634.91, from the following sources: Rent receipts from the Winona Apartments
$16,543.46
Less bad checks
632.50
$15,910.96
Laundry room receipts
121.49
Funds deposited by the petitioners
3,150.00
Unidentified deposits
1,452.46
Total
$20,634.91
Acting in their capacity as officers of the corporation, petitioners drew checks on the corporate checking account totaling $19,297.14 in payment of expenses associated with the apartments as follows: Payments to Insurance Plan Savings and
Loan Association (principal, interest,
late charges, and real estate taxes
on the Winona Apartments)
$10,900.00
Check issued to petitioner Charles Eagle
400.00
Payments for furniture for the Winona Apartments
1,551.40
Refunds of deposits to tenants
226.00
Auto expenses (tires)
* 279.75
Expenses other than auto expenses
Repairs, Furnace and Electric
Repairs, and Plumbing Repairs
$1,315.59
Gas and electric
1,952.16
Janitor service
1,695.00
Redecorating and maintenance
61.85
Insurance
197.88
Water and sewer
299.71
Advertising
39.00
Personal property taxes and
miscellaneous expenses
145.50
Hauling, snow removal, etc.
233.30
$ 5,939.99
Total
$19,297.14
*412 The corporation filed annual reports with the secretary of state of Iowa from 1966 through 1974. In each of these years through 1973 the report described the business in which the corporation was engaged as "Apartment House Operating Corporation." In 1974 the corporation listed its business as a "Land Holding Company." On the advice of petitioners' counsel, Richard L. Rick, Fortieth Corporation was listed as titleholder and petitioners as unrecorded owners of the Winona Apartments on three insurance policies which covered the apartments from August 1965 through August 1973. In the fall of 1964, Richard L. Rick prepared a warranty deed by which Fortieth Corporation conveyed its interest in the Winona Apartments to petitioners as individuals. Petitioners executed the deed in Mr. Rick's office. Mr. Rick had the deed notarized and retained it for safekeeping. He advised petitioners to leave the deed unrecorded because he believed to do otherwise would arouse anxiety among the tenants whose building had undergone *413 three successive changes in ownership in a relatively short period of time. During the course of petitioners' audit in 1975, Mr. Rick searched for the warranty deed but was unable to locate it. It had not been found at the time of trial. OPINION Petitioners contend that as beneficial owners of the Winona Apartments they are entitled to claim the income and deductions generated by the rental activity. Respondent argues that Fortieth Corporation is the appropriate taxable entity because it was actively engaged in the ownership and operation of the apartments. On brief petitioners concede that Fortieth Corporation is a separate taxable entity. They maintain nonetheless that our inquiry should focus on the ownership of the property rather than the business activity associated with it. We disagree. Mr. Eagle and his real estate attorney, Mr. Rick, assert that title to the apartments was conveyed to petitioners individually a few months after Fortieth Corporation was formed. The deed of conveyance was notarized, retained in Mr. Rick's office, and subsequently lost. It was not produced at trial. Record ownership at all times restated with the corporation until its dissolution. *414 While we find the testimony on this point to be wholly credible, it is of no help to petitioners' case. Title ownership alone is not sufficient to establish a taxpayer's entitlement to income and deductions from property. [3] As we noted in Strong v. Commissioner,66 T.C. 12 (1976), affd. 553 F.2d 94 (2d Cir. 1977), "If the corporation was intended to, or did, in fact, act in its own name with respect to property, its ownership thereof will not be disregarded." 66 T.C. at 24. In this case, the Winona Apartments were manated by the corporation which collected the rents and paid expenses, including real estate taxes, on the property. As in Strong, it borrowed money using the property as security. In 1973, it sold the apartments to a third party. We conclude that the corporation engaged in substantial business activity regarding the apartments, activity which was significantly greater than that of a mere nominee furnishing a name for land records. Paymer v. Commissioner,150 F.2d 334 (2d Cir. 1945), affg. in part a Memorandum Opinion of this Court; Commissioner v. State-Adams Corp.,283 F.2d 395 (2d Cir. 1960), *415 cert. denied 365 U.S. 844 (1961); Tomlinson v. Miles,316 F.2d 710 (5th Cir. 1963). [4] Consequently, rental income and expenses, including depreciation, to the extent they are deductible, must be reported by the corporation. In so deciding we do not wish to imply any departure from our holding in Roccaforte v. Commissioner,77 T.C. 263 (1981), on appeal (5th Cir., Feb. 4, 1982), which is clearly distinguishable on its facts. In Roccaforte investors formed a partnership to develop an apartment complex. The partnership subsequently formed *416 a corporation in order to circumvent State usury laws relating to individuals and partnerships. The corporation held record and title ownership to the property. It thereby obtained construction loans and permanent financing for the project. We held that the partnership was the owner of the apartment complex for Federal tax purposes because the corporation acted as an agent of the partnership. See National Carbide Corp. v. Commissioner,336 U.S. 422 (1949). Central to our holding was the fact, not present here, that the corporation and the partners executed a nominee agreement on the same date the corporation was organized which limited the activity of the corporation to that specifically authorized in writing by its owners. Accordingly, two of the partners instructed the corporate secretary-treasurer by letter to take title to the property, enter into a construction contract, arrange for interim and permanent financing, accept the project upon completion of construction, and attempt to rent the apartments to tenants. A corporate checking account was maintained solely to deposit advances on the construction loan, to pay interest due on the loan, and to pay the building *417 contractor for work in progress. Proceeds from the rental operations of the apartment complex were never deposited in this account. We concluded that the transaction was sufficiently structured in the narrow manner required by National Carbide for a valid corporate agency. [5]
In the instant case there was no nominee agreement *418 and no limit on the activity Fortieth Corporation might undertake. The corporation acted on its own name, received rents, and paid expenses from its own bank account, rather than in the Eagles' name or from their account. Thus, this case fails to satisfy the requirements set forth in National Carbide and is distinguishable from Roccaforte.
Petitioners nonetheless argue that a number of third parties were aware that petitioners were the legal owners of the property. The fact that these parties and the insurance policies referred to the corporation as a nominee does not automatically bring it within an exception to the general rule articulated in Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943), that a corporation is a separate taxable entity where its purpose or activity is the carrying on of business with respect to the property whose ownership is in issue. Strong v. Commissioner,supra;Harrison Property Management Co. v. United States,supra;Collins v. United States,386 F.Supp. 17 (S.D. Ga., 1974), affd. per curiam 514 F.2d 1282 (5th Cir. 1975). Finally, while conceding *419 that generally estoppel is not created by respondent's acceptance of prior erroneous returns, petitioners complain that respondent had actual knowledge that they reported rental income and expenses on their joint returns for eight years, several of which returns had been subject to audit. Unfortunately for petitioners, mere acquiescence in their treatment of rental items in prior years does not prevent respondent from attacking such treatment in later years. Union Equity Cooperative Exchange v. Commissioner,481 F.2d 812 (10th Cir. 1973), cert. denied 414 U.S. 1028 (1973), affg. 58 T.C. 397 (1972); Easter v. Commissioner,338 F.2d 968 (4th Cir. 1964), affg. a Memorandum Opinion of this Court. Decision will be entered for the respondent.
Footnotes
*. This case was tried before Judge Cynthia Holcomb Hall who subsequently resigned from the Court. By order of the Chief Judge dated February 8, 1982, this case was reassigned to Judge Perry Shields for disposition. ↩
1. In their petition, petitioners also claimed attorney's fees and costs. Since they did not raise this issue at trial or on brief, we consider it abandoned. In any event, we do not have jurisdiction to award attorney's fees and costs. McQuiston v. Commissioner,↩ 78 T.C.     (May 13, 1982).
2. The loss was computed as follows: ↩
Receipts:
Rental Income
$17,288.02 Laundry Room Receipts
162.29 Less: Refunds of Deposits
(226.00)
Total Receipts
$ 17,224.31 Expenses:
Mortgage Interest and Charges
$ 5,402.08 Repairs
722.45 Gas and Electric
2,231.91 Janitor Service
1,695.00 Redecorating and Maintenance
61.85 Furnace and Electric Repairs
270.00 Insurance
375.00 Plumbing Repairs
328.70 Water and Sewer
299.71 Advertising
39.00 Realty Taxes
3,706.89 Personal Property Taxes and
Miscellaneous Expenses
273.13 Hauling, Snow Removal, Etc.
289.54 Bank Charges
28.79 Auto Expenses
1,763.04 Subtotal
$17,487.09 Depreciation
7,630.64 Total Expenses
$ 25,117.73 Net Loss
$ (7,893.42)
*. Petitioners also incurred other automobile expenses in connection with the operation of the Winona Apartments in the amount of $1,483.29, which they paid in cash.↩
3. See Blair v. Commissioner, T.C. Memo. 1981-634. See also Harrison Property Management Co. v. United States,201 Ct.Cl. 77, 475 F.2d 623 (1973), and Carver v. United States,188 Ct.Cl. 202, 412 F.2d 233↩ (1969), wherein the Court of Claims rejected the position that state characterization of title determines whether a corporation may be ignored for tax purposes. 4. See also the discussion of nominee theory in Miller, "The Nominee Conundrum: The Live Dummy is Dead, but the Dead Dummy Should Live.'" 34 Tax Law Review 213↩ (1979).
5. In National Carbide, while deciding that subsidiaries were not true corporate agents, the Supreme Court set out a number of indicia for a true corporate agency relationship: Whether the corporation operates in the name and for the account of the principal, binds the principal, by its actions, transmits money received to the principal, and whether receipt of income is attributable to the services of employees of the principal and to assets belonging to the principal are some of the relevant considerations in determining whether a true agency exists. If the corporation is a true agent, its relations with its principal must not be dependent upon the fact that it is owned by the principal, if such is the case. Its business purpose must be the carrying on of the normal duties of an agent. * * * [336 U.S. at 437↩. Fn. refs. omitted.]