**PROCTER & GAMBLE CO. v. NEWTON et al.**

(District Court, S. D. New York. June 4, 1923.)

1. **Taxation ⬤⟿164—State law held not to impose tax on corporation, unless it is doing business within the state, so as to be subject to tax levy.**

Tax Law N. Y. § 211, subd. 9, as added by Laws 1920, c. 640, § 3, and amended by Laws 1922, c. 507, § 1, directing consolidated reports of parent and subsidiary corporations, where the subsidiaries are doing business within the state, and authorizing the commission to impose the tax provided by that article as though the entire net income and segregated assets were those of one corporation, without expressly requiring the tax to be assessed against the parent corporation, authorizes a tax on the parent corporation only in case it is doing business within the state, so as to be subject to the tax levied by section 209 of that article.

2. **Taxation ⬤⟿13—Right to tax privilege of doing business is corollary of right to exclude corporation.**

The state's right to impose a tax on the privilege of doing business within her borders is corollary to her right to exclude the corporation from doing any business at all, and in each case must turn on whether the corporation has entered the state's borders.

3. **Taxation ⬤⟿164—Foreign corporation does not do business in state by owning stock of subsidiary corporation doing such business; "doing business."**

The mere fact that some, or even all, of the stock of a subsidiary corporation doing business within the state is owned by a foreign corporation, does not establish that the foreign holding corporation is doing business within the state, so as to be subject to the state tax on that privilege, if the affairs of the subsidiary are directly controlled by its own officers, though they may be subject to indirect control of the holding corporation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

In Equity. Suit by the Procter & Gamble Company against Charles D. Newton, individually and as Attorney General of the State of New York, and others, to restrain the collection of a tax. Decree rendered for complainant.

Philip Russell, of New York City, for complainant.

C. T. Dawes and Francis W. Cullen, both of Albany, N. Y., for defendants.

---

LEARNED HAND, District Judge. This is a suit in equity to re-strain the collection of a tax assessed against the plaintiff, an Ohio corporation. The plaintiff was a large manufacturer of soap and other allied products, but concededly doing no business in New York, ex-cept as the following facts disclose:

The Procter & Gamble Manufacturing Company was also an Ohio corporation, a subsidiary having several factories, some of them in New York; all of its shares were owned by the plaintiff, which con-trolled its operations through officers elected by it. The Procter & Gamble Distributing Company, likewise an Ohio corporation, was the sales company of both the plaintiff and the Procter & Gamble Manu-facturing Company. It bought their products at prices fixed by agree-ment between its officers and theirs, and sold at what it could get. One-half its shares were owned by the plaintiff, and the rest were scattered among individuals not shown to be under the plaintiff's control. Its operation by the plaintiff was, however, indirectly controlled by the plaintiff's ownership of its half of the shares. So far as appears, the business of each subsidiary is immediately conducted by its own offi-cials, who make all its contracts and transact its other business. Each is acknowledged to be doing business in New York and has taken out a license for that purpose.

In the year 1920 the New York tax commission required a "consoli-dated report" of the plaintiff under subdivision 9 of section 211 of article 9–A of the New York Tax Law (Consol. Laws, c. 60), as added by Laws 1920, c. 640, § 3, and amended by Laws 1922, c. 507, § 1, which the plaintiff furnished. Thereupon the commission assessed a tax against the plaintiff on the joint income of all three companies, and separate taxes against the Procter & Gamble Manufacturing Com-pany and the Procter & Gamble Distributing Company, each of trifling amount. It was the commission's idea that the plaintiff's share owner-ship in its subsidiaries made the plaintiff subject to local taxation. The plaintiff, insisting that it had never done business in New York, after some fruitless negotiation with the officials filed this bill.

At the outset two questions must be distinguished, which the argu-ments at the bar did not separate, or at least I failed to observe it. The first is whether subdivision 9 of section 211 gave any authority to the commission, in assessing the income of the Procter & Gamble Manufacturing Company, to include in its income the gross income of itself and the plaintiff which owned all its shares. The second is whether the Tax Law in any section subjects the plaintiff to a direct assessment, and, if it does, whether it is constitutional. The first ques-tion is not raised in the case at bar, because the commission has not tried to assess the Procter & Gamble Manufacturing Company on the basis of the joint income of itself and the plaintiff.

[1] As to the second, it must be observed that subdivision 9 of sec-tion 211 makes no effort to extend the scope of section 209 by includ-ing among those corporations which are doing business in the state parent companies, but, on the contrary, by implication seems rather to exclude them. It does direct such companies to file a "consolidated report" of the "combined net income," but it only authorizes the com-mission to "impose the tax provided by this article as though the en-

tire net income and segregated assets were those of one corporation." Impose on whom? The "tax provided by this article" is that mentioned in section 209. There is no suggestion anywhere that a corporation owning all the shares of another is by that fact "doing business" within the state. Apparently that phrase in section 209 was left for such interpretation as the law would give it.

Subdivision 9 of section 211 was designed, I should suppose, merely to allow the commission to estimate the income of a subsidiary in the case therein provided by another standard. That would be a proper enough course, since the subsidiary's privilege of doing business within the state is always conditional on such terms as it chooses to impose. Instead of being interpreted as, in addition, changing the definition of what is "doing business," it would seem rather to recognize that the parent company as such remained outside the jurisdiction. In any event section 209 was not enlarged by this subdivision, and the question at best depends upon what is its natural meaning.

If our law regarded a corporation as an association of individuals created for purposes defined in their charter, whose extent was measured as we measure that of a consensual association, like a partnership, an unincorporated society, or a criminal conspiracy, the result would be simpler. Such a corporation would be immanent in everything which was done in execution of its purposes. Or if we had the hardihood to adhere to the rigid convention of a corporation persona, in which, however empty a shell, all rights reside, and to which all duties attach, whatever the strain on our moral predilections, at least we should have a workable concept. As it is, our law has been baffled by the problem, and has wavered between the two alternatives. Since we have had no statute of uses to execute the dry use, I have no great confidence that I can pick a certain path among the cases.

[2, 3] The state's right to impose a tax upon the privilege of doing business within her borders being corollary to her right to exclude the corporation from doing any business at all (Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357; Horn Silver Mining Co. v. N. Y., 143 U. S. 305, 12 Sup. Ct. 403, 36 L. Ed. 164), each case must turn upon whether the corporation has entered the state's borders. The cases are notoriously at sea, not only on the application of the rule, but on its definition. Cases involving taxation are apparently hard to find, but in New York it is settled that the ownership of a controlling interest in the shares of a domestic corporation is not enough to subject a foreign corporation to the tax. People v. Amer. Bell Telephone Co., 117 N. Y. 241, 22 N. E. 1057. The rule was extended without apparently any notice of a difference to the case of complete ownership. People ex rel. Edison L. & P. Co. v. Kelsey, 101 App. Div. 205, 91 N. Y. Supp. 709. So far as I can find, these cases represent the law of New York on this statute.

The rule appears to be the same on the kindred subject of jurisdiction in personam. It is true that it has been said that the two subjects are not to be confused. Henry M. Day & Co. v. Schiff, Lang & Co. (D. C.) 278 Fed. 533, 535, though I cannot quite see why. Each depends upon the power of the state to forbid the corporate activities, and the conditions would seem to be limited by the power. However that may be, the questions are certainly nearly related, and in Conley v.

Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113, it was held that complete ownership of shares did not identify the corporations. A fortiori is this the case when there is only majority control, Peterson v. Chic., etc., R. R. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841; U. S. v. American Bell Tel. Co. (C. C.) 29 Fed. 17. The same rule was recognized in Colonial Trust Co. v. Montello Brick Works, 172 Fed. 310, 313, 97 C. C. A. 144, though the facts required a different result. There the holding company had no business within the state of its organization, and conducted all its business in Pennsylvania, the home of the subsidiary.

Somewhat similar questions have arisen in the regulation of railroads. Thus, in considering the Hepburn Act (34 Stat. 584), the Supreme Court refused to regard the ownership of coal by companies whose shares were owned by the railroads as ownership by the roads themselves. U. S. v. Del. & Hudson Co., 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836. Again, where the question was of a terminal charge. Interstate Com. Com. v. Stickney, 215 U. S. 98, 30 Sup. Ct. 66, 54 L. Ed. 112. However, when there are added features in the relations of the two companies, from which it is apparent that the subsidiary is not left with any autonomy, but the parent is directly operating the business by its own agents and officers, the rule is different. U. S. v. Lehigh Valley R. R. Co., 220 U. S. 257, 31 Sup. Ct. 387; 55 L. Ed. 458; U. S. v. Del., Lack. & W. R. Co., 238 U. S. 516, 35 Sup. Ct. 873, 59 L. Ed. 1438; Chicago, M. & St. P. Ry. v. Minn. Civic Assoc., 247 U. S. 490, 38 Sup. Ct. 553, 62 L. Ed. 1229.

It is true that in U. S. v. United Shoe Machinery Co. (D. C.) 234 Fed. 127, Judge Trieber asserted jurisdiction over certain corporations which held all or substantially all the shares of the subsidiary which had been served. Apparently he regarded this connection between the two as enough. That is, however, not altogether clear; the case came up on motion to dismiss the bill, and it was alleged that the subsidiary was only a "selling and leasing department" of one of the parent companies. Such an allegation may well be read as meaning that in the actual conduct of its affairs the subsidiary was directed, not by its own officers, but by those of the parent.

In the case at bar, it does not appear that the organization of the plaintiff is not quite separate from that of the Procter & Gamble Manufacturing Company and of the Procter & Gamble Distributing Company. I must assume that each subsidiary has its own set of officials, who actually conduct its business. Of course, in the end they must obey the will of the plaintiff, since they hold their offices at its pleasure; but the control can be exerted only indirectly through the substitution of new directors. Whether the distinction has more than a formal existence is not important here, if it be actually taken in the books. There seems to me no doubt that it is, and that the plaintiff was not, therefore, doing business in New York.

As to my jurisdiction over such a bill as this, I have nothing to add to what I said in Gorham Mfg. Co. v. Travis (D. C.) 274 Fed. 975. The plaintiff may take a decree enjoining the collection of any tax upon the assessment in question.