**ALPHA TANK & SHEET METAL MFG. CO.**

v.

**UNITED STATES.**

No. 50133.

United States Court of Claims.

Dec. 1, 1953.

Norman Begeman, St. Louis, Mo., for plaintiff. Lowenhaupt, Waite, Chasnoff & Stolar, St. Louis, Mo., on the briefs.

J. W. Hussey, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

Plaintiff seeks a refund of certain income and excess profits taxes assessed and paid for the calendar years 1943 to 1946, inclusive. The issue turns on whether the Collector of Internal Revenue was justified in reallocating the income as between two corporations.

The plaintiff, a Missouri corporation with headquarters in St. Louis, at all times material to the issues involved, was engaged in manufacturing metal products for specialized industries.

Since 1921 the plaintiff's stock has been held entirely by Alfred Allina and

Herman F. Walz, except for small amounts held by members of their families.

The company was in financial difficulty in 1917, but its condition had improved by 1921, at which time Walz invested in it. Since that date the ownership has remained substantially the same. In 1928 the name of the company was changed to that of the plaintiff, after which date Allina and Walz remained the beneficial stockholders.

In 1928 plaintiff purchased land and erected a new and larger plant. In 1930 the company was again in financial difficulty. After an unsuccessful attempt to work out a solution of its difficulties, foreclosure proceedings on plaintiff's plant were instituted, and in 1932 plaintiff signed a quitclaim deed to the property. During 1936 the plaintiff submitted to § 77B bankruptcy proceedings, 11 U.S.C.A. § 207. A creditors' committee headed by C. C. Johnson, who had acted in the same capacity in the previous difficulty, took over and operated plaintiff's business. The committee rented the property for plaintiff's operation, but in 1937 the plaintiff was compelled to vacate its plant as the property had been sold to another corporation.

Plaintiff acquired from the Liberty Foundry Company its present plant in 1937 at a cost of $50,000, represented by a first trust of $30,000 and a second trust of $20,000. By December 18, 1942 the second trust had been fully paid.

On October 12, 1942 Delmo Realty and Investment Company was incorporated with an authorized capital stock of 200 shares, only 50 of which were issued and placed in the name of Charles Wingate and others. Soon thereafter these 50 shares were cancelled and new certificates were issued, one for 48 shares to C. C. Johnson, and two for one share each to his son and his secretary. The shares were then indorsed in blank and placed in Johnson's lock box to which Allina had access. Allina and Walz each contributed $500 to Delmo at the time of its organization.

On January 18, 1943 plaintiff's property was deeded to Delmo, and a 5-year lease of the property with renewal privileges was made to plaintiff at a rental rate of $1,000 per month. The plaintiff was to pay all repairs, insurance, license fees and general taxes which would otherwise have been the obligations of Delmo.

Delmo had acquired the property at the book value of $41,854.09, of which $1,854.09 was paid in cash, the balance being in the assumption of a $25,000 obligation secured by a deed of trust from plaintiff to Liberty Foundry Company, and the execution of a second deed of trust by Delmo to plaintiff in the sum of $15,000. The cash payment consisted of the $1,000 contributed by Allina and Walz, plus certain amounts from the rentals plaintiff had paid to Delmo. Plaintiff guaranteed the payments on the first deed of trust.

No entry in Delmo's books showed any financial interest of Allina and Walz in the Delmo Company. Delmo had no property except the plant occupied by plaintiff, and no income or business except that of collecting the rents to which reference has been made.

Allina and Walz caused the organization of Delmo in order that the rentals collected from plaintiff might be accumulated as a personal retirement fund for Allina and Walz and for their widows in the event of the death of either. Another stated purpose was to avoid the loss of the plant and equipment in the event of possible financial difficulties of plaintiff in the future.

The plaintiff and Delmo filed their income and excess profits tax returns for the years 1943 to 1946, inclusive.

The plaintiff in filing its tax returns for the years involved deducted as ordinary and necessary expenses the amount of the rental payments for the plant property.

The Collector of Internal Revenue disallowed plaintiff's deductions of rental payments from plaintiff to Delmo, added these to plaintiff's income, thus combin-

ing the income of both, then made adjustments for the tax paid by Delmo, and levied and collected an additional net assessment against plaintiff in the sum, including interest, of $9,731.89. Some additional levies for the year 1946 were collected.

The details of these transactions are set out in findings 15 to 18, inclusive.

The plaintiff claims the Commissioner of Internal Revenue under the facts of record had no right to reallocate the income and that the additional taxes should not have been assessed and collected.

The defendant pleads that the deductions were properly disallowed under section 45, 26 U.S.C.1946 ed., § 45, of the Internal Revenue Code, and that the disallowance was further justified by section 129(a) of the same code.

The two sections are set out in the footnote.[1]

█ We agree that the Collector of Internal Revenue had full authority for the action taken. Delmo was organized, owned, and controlled by the same two stockholders, Allina and Walz, who owned and controlled the plaintiff. The trial commissioner has found and we agree that the facts justify a finding that Delmo was used by them simply to hold legal title to the operating plant used by plaintiff, to accumulate the rentals collected from plaintiff for the personal benefit of the stockholders and to reduce the income of plaintiff.

█ The plaintiff insists and cites a number of authorities to the effect that a taxpayer is privileged to minimize his tax and is free to adopt such organization of his affairs as he may choose. That general principle is correct. But the application of that well-recognized rule depends on the facts of the case, the substance of the organization, and the use that is made of it.

The application of this principle does not mean that a person may reduce his income tax by transferring his money from one pocket to another even though he uses a different pair of trousers. A man with a half-dozen pockets might almost escape liability altogether.

We quote from Higgins v. Smith, 308 U.S. 473, 477–478, 60 S.Ct. 355, 358, 84 L.Ed. 406, in which the Court used the following language:

"* * * A taxpayer is free to adopt such organization for his affairs as he may choose * * *.

"On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him, The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and

1. "§ 45. Allocation of income and deductions

"In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among . such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to re-

flect the income of any of such organizations, trades, or businesses."

"§ 129. Acquisitions made to evade or avoid income or excess profits tax

"(a) Disallowance of deduction, credit, or allowance. If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, * * * and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. * * *"

manner of taxation. It is command of income and its benefits which marks the real owner of property."

We find no legitimate corporate business motive was involved in the organization of Delmo. The transfer of the plant to it and the lease back to plaintiff were integral parts of the same transaction. The attempted creation of deductions for rentals of a plant when there was no real change in ownership in the circumstances of this case is not a sufficient business motive.

When the revenue agent examined the 1943 returns of the plaintiff he discovered from plaintiff's books that the plant property had been disposed of although nothing in the returns disclosed that fact. By diligent inquiry he learned of the existence and location of Delmo to which the plant had been deeded. C. C. Johnson, president of Delmo, insisted that the stock standing in his name represented his own investment and that neither plaintiff, Allina nor Walz had any financial interest in the company. Further investigation by the revenue agent disclosed the beneficial ownership of Delmo's stock. The Commissioner, therefore, combined the accounts of plaintiff and Delmo, resulting in additional assessment against plaintiff and allowing credit for overassessment against Delmo. The tax liabilities were adjusted accordingly.

It further appears that there was no material substance to the claim that the deed of transfer was made to Delmo so that in the event plaintiff again got into financial difficulties it would not lose the plant since plaintiff remained liable on the first trust for $25,000, in fact, guaranteed its payment, which was the balance due at that time on the first trust between Alpha and Liberty. The plaintiff thus escaped no liability. There was no substantial business purpose in organizing Delmo and no substantial business was conducted by it.

In order to reflect clearly the income of the plaintiff the Commissioner of Internal Revenue correctly allocated all income, deductions, credits and allowances claimed by Delmo, arising from its holding of title to plaintiff's manufacturing plant, to the plaintiff in each of the years involved.

The petition is dismissed. It is so ordered.

MADDEN, WHITAKER and LITTLETON, Judges, concur.