Howard A. JACKSON and Elizabeth
D. Jackson, Petitioners,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 267, Docket 23891.

United States Court of Appeals
Second Circuit.

Argued April 4, 1956.
Decided May 3, 1956.

Ewing Everett (New York City), David W. Richmond, Numa L. Smith, Jr. and Miller & Chevalier, of counsel (Washington, D. C.), for petitioners.

Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attorneys, Department of Justice (Washington, D. C.), for respondent.

Before FRANK, MEDINA and WATERMAN, Circuit Judges.

FRANK, Circuit Judge.

The basic question here is whether certain corporations should be disregarded with the result that transactions carried out by them should be treated as if the corporations did not exist and as if the transactions had been those of the taxpayers themselves. The facts are fully stated in the opinion of the Tax Court, reported 24 T.C. No. 1, and we need but briefly summarize them here.

Taxpayers and two others, Cohn and Harris, each owned one-third of the stock of Empire Industries, Inc. (hereafter Empire). Empire owned numerous other corporations whose acquisition had been financed by loans personally guaranteed by Mr. Jackson. Attempts by Jackson to reduce this large contingent liability engendered such friction between Jackson and Cohn that it was decided to form a new corporation, Lewis of Delaware (hereafter Lewis), to which would be transferred one-third of the as-

sets of Empire in exchange for all the capital stock of Lewis. Lewis was to be either a wholly-owned subsidiary controlled and managed by Jackson or a separate corporation owned, as well as controlled, by Jackson. The latter alternative was eventually chosen, and the taxpayers proceeded to exchange their one-third interest for all of the Lewis stock by a series of transactions involving two corporations, Dumelle Corporation (Dumelle) and Belgrade Properties, Inc. (Belgrade), wholly owned and controlled by taxpayers. Taxpayers first created Dumelle and then transferred their one-third interest in Empire to Dumelle in exchange for all of Dumelle's capital stock. Then a pre-existing corporation, Belgrade, which was wholly owned by Mrs. Jackson and had never conducted any business, purchased the Empire stock from Dumelle in exchange for $1,-000 in cash and $469,000 in interest-bearing notes payable over 20 years. The final step in the overall transaction was an exchange between Belgrade and Empire—Belgrade receiving the entire capital stock of Lewis in exchange for the one-third interest in Empire which Belgrade then held. The activity of the two corporations in question was of a very limited nature. Dumelle's only activity was the receipt of Empire stock from the taxpayers and the sale of the same stock to Belgrade. Belgrade's only activity was to purchase the Empire stock from Dumelle, exchange it for Lewis stock with Empire, and to hold the Lewis stock.

The taxpayers had this purpose in creating the Dumelle Company and using the Belgrade Company: to insure that Mrs. Jackson, as owner of all the stock of Belgrade, should have, as her sole property, free of any claim of Jackson's creditors, any future increment in the value of the stock of the Lewis Company over and above its fair market value in April 1949 (that value as of that date being $1,000 more than the face amount of the note for $469,000 given by Belgrade to Dumelle). Although Belgrade was to and did become the owner of the Lewis stock, it was intended not to and did not exercise any functions with respect to the management of Lewis.

Unquestionably, the taxpayers had a personal business purpose other than (or in addition to) that of avoiding taxation. Consequently, if a taxpayer's personal purpose, in creating a corporation, controls, the Tax Court erred. But we read the pertinent Supreme Court decisions, and our own decisions interpreting the Supreme Court's views, as follows: A corporation may not be disregarded in respect of taxation if, *inter alia,* a bona fide intention in creating it was that the corporation itself should have some real substantial business function,[1] or if it actually engages in business; on the other hand, the corporation may be disregarded, in the absence of such an intention or activity. The intended or actual business functioning of the corporation itself, not the taxpayer's aim to be accomplished via the corporation, is the test.[2]

Reviewing previous decisions, including Higgins v. Smith, 308 U.S. 473, 477–478, 60 S.Ct. 355, 84 L.Ed. 406, the Supreme Court in Moline Properties v. Commissioner, 319 U.S. 436, 439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499 said: "The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's per-

---

1. When there is such an intention, but the intended business functioning does not become effective, the corporation is not to be disregarded in the interval before it becomes evident that the corporation will not so function. See National Investors Corp. v. Hoey, 2 Cir., 144 F.2d 466.

2. A natural person may be used to receive income which in fact is another's. So, too, a corporation, although for other purposes a jural entity distinct from its stockholders, may be used as a mere dummy to receive income which in fact is the income of the stockholders or of someone else; in such circumstances, the company will be disregarded.

sonal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." In National Investors Corp. v. Hoey, 2 Cir., 144 F.2d 466, 468, a parent company wished to combine itself and several subsidiaries into a single corporation; as a preliminary step, it transferred the stock of the subsidiaries to another corporation which had no other assets or liabilities; during the time when the plan of consolidation was being formulated and submitted to the stockholders of the parent, the new company engaged in no activity except to receive and hold the stock of the subsidiary companies; the plan of consolidation was rejected by the stockholders of the parent company, and the new company was subsequently liquidated. We ruled that the corporate entity of the new company could not be disregarded up to the time when the stockholders rejected the plan of consolidation, because its use, meanwhile, as a means of achieving the consolidation and holding the transferred securities, "was a 'business' activity." We said that Moline Properties "merely declares that to be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term 'corporation' will be interpreted to mean a corporation which does some 'business' in the ordinary meaning * * *." In Paymer v. Commissioner, 2 Cir., 150 F. 2d 334, 337, a corporation was formed with the sole intention of serving "as a blind to deter the creditors of one of the partners" who had organized it. We said that it "was at all times but a passive dummy which did nothing but take and hold the title to the real estate conveyed to it. * * * It was but a sham, to be disregarded for tax purposes." We think the instant case comes within this Paymer ruling.[3]

Affirmed.

---

3. This conclusion is fortified by the fact that taxpayers' purpose would have been as well served if the Lewis shares had been transferred to Mrs. Jackson as her property in consideration of her giving the $470,000 note, or if they had been transferred to a trustee for Mrs. Jackson and the trustee had given the note.

We disagree with the Tax Court as to the following: We think it immaterial (1) that the transactions between the Jacksons, the Dumelle Company and the Belgrade Company were not "at arm's length," and (2) that there was no disclosure of those transactions to Harris and Cohn.