**HAGIST RANCH, INCORPORATED,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

**No. 13292.**

United States Court of Appeals
Seventh Circuit.

Oct. 25, 1961.

Wilbert J. Hohlt, James B. House, Nashville, Ill., Francis J. Sullivan, St. Louis, Mo., for petitioner.

Louis F. Oberdorfer, Lee A. Jackson, A. F. Prescott, David O. Walter, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and DUFFY and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Hagist Ranch, Incorporated, the taxpayer, has petitioned us to review a decision of the Tax Court of the United States. This decision sustained the Commissioner's determination of certain deficiencies in federal income tax for the years 1955 and 1956.

Petitioner filed its claims for refund for the same years contending that its corporate form was a mere conduit for the receipt of income for its individual shareholders. The Commissioner determined that petitioner was a separate taxable entity carrying on the business for which it was organized, thereby subjecting itself to the tax imposed upon corporations by Section 11(a) of the Internal Revenue Code of 1954, 26 U.S. C.A. § 11(a).[1] The Commissioner was sustained by the Tax Court. Hagist Ranch, Incorporated, P-H 1960 Mem. Dec. ¶ 60,206 (1960).

The sole question presented for review is whether the Tax Court erred in refusing to disregard petitioner-taxpayer's corporate entity.

There is no dispute as to the facts, most of which were stipulated. The relevant facts as found by the Tax Court and stated in its opinion may be generally summarized in the following narrative.

Some time before November, 1938, E. R. Hagist became a debtor in bankruptcy. Included in the bankrupt's estate was Hagist's undivided one-half interest in approximately 20,000 acres of Texas land. The other one-half interest had been conveyed by Hagist earlier to Earl C. Frates and Herschel Cooper under a contract entered into in 1932.

Hagist died testate in 1938, and his interest in the 20,000 acres passed to Louis J. Scheve and Harry Troll as trustees. The trustees were empowered to enter into an arrangement with the creditors of the debtor estate and to convey the 20,000 acres to a corporation to be formed for the purpose of liquidating the assets of the debtor estate in an orderly manner.

In 1939, a creditors' protective trust was formed, and Scheve was designated trustee with authority to execute the trust through a corporation. In the

1. "Sec. 11. Tax imposed. (a) *Corporations in general.*—A tax is hereby imposed for each taxable year on the taxable income of every corporation. * * *"

same year, the contemplated corporation was formed, and it is the petitioner in these proceedings. The stock of the corporation was divided between preferred and common. The preferred stock was issued to the creditors and was "preferred as to assets and dividends" and "callable at par and redeemable out of the income and sale of the assets turned over to said corporation by the Trustee." The common stock was issued to the trustee of the creditors' trust with the power to vote it until redemption of the preferred stock. After redemption and payment of trust and corporation expenses, the common stock was to be turned over to Hagist's heirs and the income therefrom was to be paid to them.

The stated purpose of the corporation was: " * * * the establishment of land companies to buy, own, sell and convey real estate and minerals, and engage in mining, agriculture and stockraising * * *." The corporation was empowered to buy and sell property and enter into contracts.

After its incorporation, petitioner acquired by warranty deed the one-half interest in fee simple title to the 20,000 acres of Texas land held by Scheve as part of the debtor estate.

Directors and officers of the corporation were elected; a corporate seal and printed letterheads were adopted and utilized; and annual reports were prepared and adopted by the directors. Petitioner's directors met 99 times in the years 1939 through 1956, and there were 17 shareholders' and 13 organization meetings.

Throughout its corporate existence, petitioner executed in excess of 80 oil and gas leases and various other instruments and contracts. Up to 1955 these leases were negotiated by Earl C. Frates and Herschel Cooper, the owners of the other one-half interest in the land, as agents of petitioner. The leases were adopted and executed by petitioner as negotiated. In 1955, Taliaferro Cooper, who had succeeded to the interests of his deceased father (Herschel Cooper), and Earl C.

Frates entered into a written agreement with petitioner. Under this agreement, Frates and Cooper were the sole and exclusive agents of petitioner for managing the land and negotiating oil and gas leases on behalf of petitioner. Petitioner was obligated to execute necessary instruments when requested by Frates and Cooper.

Petitioner periodically paid dividends, and the preferred stock was called prior to June 30, 1954. At this time, liquidation of the corporation was considered, but it was decided to continue the corporate form in order to facilitate the execution of the leases and to avoid the necessity of partitioning the realty among the beneficial owners. The legal title to the common stock was transferred to Hagist's heirs, and they thereby gained complete control of petitioner-corporation.

After gaining control of the corporation, the common stockholders elected themselves directors and officers. The following are examples of the activities and actions undertaken at the shareholders' or directors' meetings during 1955–56: Approval of several amendments to the bylaws; approval of regular dates for directors' meetings; approval of the payment of numerous bills; declaration of dividends on the common stock; appointment of a director to investigate the decline in royalty receipts; instructions to several directors to invest in short-term government obligations; and the approval of fees for a director, Byron O. House.

On February 21, 1955, the heirs executed a declaration of trust conveying legal title to the common stock to the First National Bank in Mascoutah, Illinois, as trustee. This trust was declared to be a passive trust created for the purpose of holding naked legal title for the joint convenience of the beneficiaries. The activity of the bank as trustee was solely to receive dividends from petitioner-corporation and to distribute them to the heirs.

As the Tax Court pointed out in its opinion, the tests of whether a corpo-

ration may be disregarded and the tax incidents attributed to the shareholders are aptly set out in Jackson v. Commissioner of Internal Revenue, 2 Cir., 1956, 233 F.2d 289, 290, affirming 24 T.C. 1, as follows: "A corporation may not be disregarded in respect of taxation if, *inter alia,* a bona fide intention in creating it was that the corporation itself should have some real substantial business function, or if it actually engages in business; on the other hand, the corporation may be disregarded, in the absence of such an intention or activity. The intended or actual business functioning of the corporation itself, not the taxpayer's aim to be accomplished via the corporation, is the test."

In the landmark case of Moline Properties v. Comm'r, 1943, 319 U.S. 436, 438–439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499, the Supreme Court said: "The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, *so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.* * * * " (Emphasis added.) The recognized exceptions to this rule have no application here.

Petitioner contends that the purpose of its incoporation was the liquidation of amounts due the creditors of Hagist's bankrupt estate. It further urges that the purpose of the corporation was changed in 1955 from accommodating Hagist's creditors to accommodating Hagist's heirs by avoiding the necessity of partitioning the land. These activities come within the sphere of business activities defined in Moline Properties, supra, and "this merely serves to emphasize petitioner's separate existence." Id., 319 U.S. at page 440, 63 S.Ct. at page 1134.

In addition to having a business activity as its purpose, petitioner carried on business following its incorporation. Through its paid agents it engaged in extensive leasing activities; it collected royalties and distributed them as dividends; it purchased additional acreage; some of its officer-directors visited the realty and made reports at corporate meetings; and one of its directors was appointed to investigate the decline in oil royalties. These activities are not characteristic of a corporation which is passive and a mere conduit for payment to beneficial owners.

A recent examination of whether a corporation was carrying on business is found in C. I. R. v. State-Adams Corporation, 2 Cir., 1960, 283 F.2d 395, certiorari denied, 365 U.S. 844, 81 S.Ct. 802, 5 L.Ed. 809. The activities in that case which were held to be carrying on business were fewer than here.

And so, in the case before us, even though petitioner kept no business office, did not itself exploit its rich mineral lands and did not through its director-officers personally negotiate the leases and other contracts it executed, we cannot say it was a sham and that its organization and conduct were not for an accepted business purpose within the ordinary meaning of these words.

We have considered the authorities cited by petitioner in support of its contentions. However, we find that all of them were decided prior to the adoption of the Sixteenth Amendment and involved different statutory provisions from those under scrutiny in the case at bar.

Under the circumstances surrounding petitioner's incorporation and its subsequent business activities, we hold that the Tax Court did not err in refusing to disregard petitioner's corporate entity and in determining that it was a separate taxable entity.

The decision of the Tax Court is

Affirmed.