**T. M. BRITT and Jane Britt et al.,
Plaintiffs-Appellants,**

v.

**The UNITED STATES of America,
Defendant-Appellee.**

**No. 27310.**

United States Court of Appeals,
Fifth Circuit.

May 14, 1970.

Tuttle, Circuit Judge, filed a specially concurring opinion.

M. W. Wells, Jr., James A. Moreland, Orlando, Fla., for plaintiffs-appellants.

Edward F. Boardman, U. S. Atty., Tampa, Fla., Mitchell Rogovin, Johnnie M. Walters, Asst. Attys. Gen., Eugene P. Kopp, H. Stennis Little, Jr., Lee A. Jackson, Robert I. Waxman, Attys., Tax

Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before TUTTLE, WISDOM and BELL, Circuit Judges.

WISDOM, Circuit Judge:

This tax refund case involves the difficult application of the rule that income from property must be taxed to the individual who, in substance, is the owner of the property generating the income. Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75. Here, the taxpayers transferred the property in question to three corporations. The district court found that as a matter of law the level of business activity was not sufficient to require recognition of the corporations as separate taxable entities. The district court therefore disregarded the existence of the corporations as separate taxable entities and held that the income attributable to the corporations in 1959, 1960, and 1961 was attributable to the individual taxpayers and should be included as part of their taxable income for the years in question. Britt v. United States, M.D.Fla.1968, 292 F.Supp. 6. We reverse.

## I.

The case was tried upon a stipulation of facts. Because of the nature of the case, we feel that it is important to go into the facts at some length.

T. M. Britt and Harold M. Britt are brothers [1] who have been in partnership since 1952 doing business as the Britt Fruit Company (Company). The Company is engaged in the business of operating citrus groves and of providing grove caretaking services. The assets of the Company are composed primarily of citrus groves and of grove caretaking equipment. The marketing of fruit from the Company's groves is handled largely through a local farm cooperative. From time to time the Company acquired stock in this cooperative.

The Florida Citrus Production Credit Association and The Federal Land Bank have supplied most of the capital essential to the Company's operations. Since 1953, the Company has maintained loans with the Credit Association and with every loan, the Company has been required to purchase shares of Class A stock of the Credit Association.

Originally, T. M. Britt and Harold M. Britt each owned an undivided fifty percent interest in the Company. In 1958, T. M. Britt transferred an undivided four percent interest in the business and assets of the Company to his son, Thomas E. Britt. The transfer was a gift on Thomas's twenty-first birthday.[2]

September 27, 1958, T. M. Britt and Harold M. Britt organized three Florida corporations: Tommy Britt Corporation, Connie Corporation, and Harold M. Britt, Inc. The corporations were formed for three purposes: (1) To encourage T. M. Britt's children to take an active interest in the operations of the Company; (2) To provide the children with additional income; and (3) To facilitate T. M. Britt's and Harold M. Britt's estate planning. The corporations were formed at the suggestion of T. M. Britt's accountant, Mr. Robert F. Stonerock. Mr. Stonerock advised T. M. Britt of the legal problems and accounting difficulties inherent in transferring fractional interests in the partnership businesses. The use of the corporate form was suggested to avoid the legal and accounting problems and to facilitate the anticipated transfers to the children.

October 1, 1958, T. M. Britt transferred to each corporation, in exchange for its capital stock, a fourteen percent interest in the Company and in each of the assets of the Company. The transfer was made in exchange for one thousand shares in each corporation. Harold M. Britt transferred an undivided twenty-one percent interest in exchange for one thousand shares in Harold M. Britt, Inc.

---

1. Jane Britt is a party to this action only because she executed a joint tax return with her husband, T. M. Britt.

2. December 1961, T. M. Britt made a similar transfer to his daughter, Constance Britt.

The net effect of the transfers was that each corporation became a partner in the Britt Fruit Company.[3] All federal tax returns filed by the partnership have reflected the ownership of the undivided interests owned by the three corporations.

Since their inception the corporations have continued to maintain their *de jure* status under the laws of the State of Florida. The corporations have filed all required state tax returns and an annual Corporate Stock Tax return with the Secretary of State of Florida. All taxes which have been shown to be due have been paid.

The corporations have maintained checking accounts in the First National Bank of Winter Garden, Winter Garden, Florida. Checks drawn on these accounts reflect payment of corporate obligations: Attorney's fees and cost for organization expenses, payment of income tax, payment of state capital stock tax, and payment of accounting fees to a Certified Public Accountant for preparing the annual income tax return of each corporation. Deposits to these accounts represent distribution of cash from the Company.

As partners in the Company, the corporations have been required to join in the execution of all commercial and financial documents relating to the Company. Since their organization, the Credit Association has included all three corporations as co-owners of the partnership property. The Credit Association has required each corporation to join in the execution of all notes and mortgages relating to the partnership property. After October 1, 1958, every loan application, note, and mortgage reflects that the Britt Fruit Company is named for T. M. Britt, Harold M. Britt, Thomas

Britt, Connie Corporation, Tommy Britt Corporation, and Harold M. Britt, Inc. Before the Credit Association would approve loans to the Company, the corporations were required to furnish a certified copy of a corporate "Resolution to Borrow," executed by the officers of each corporation. With every loan, each corporation has been required to purchase shares of Class A stock of the Credit Association. The records of the Credit Association indicate that Tommy Britt Corporation, Connie Corporation, and Harold M. Britt, Inc., together own 847 shares of Class A stock, and that dividends totalling over $250 have been paid to these corporations. This money has been deposited in the corporations' checking accounts at the First National Bank in Winter Garden, Florida. The Credit Association has required the yearly filing of financial statements by the Company and by each of its members. This requirement has necessitated the employment of an accountant by each of the corporations.

December 1959, T. M. Britt transferred sixty shares of stock of Tommy Britt Corporation to Thomas Britt. One year later, an additional forty shares were transferred. Identical transfers of Connie Corporation stock were made to Constance Britt. December 1960, Harold M. Britt transferred five shares each to Thomas and Constance Britt and ten shares to his sister, Eula Britt Grant.

At the end of the first tax year, a corporate income tax return was filed by each of the corporations. At the beginning of their second tax year, October 1959, Tommy and Connie Corporations filed elections to be taxed as Subchapter S corporations.[4] An election was again made in October 1960.[5] Harold M. Britt, Inc. did not elect to be

---

3. The respective interests in the Company partnership were:

| | |
|---|---|
| T. M. Britt | 18% |
| Thomas Britt | 4% |
| Tommy Britt Corporation | 14% |
| Connie Corporation | 14% |
| Harold M. Britt | 29% |
| Harold M. Britt, Inc. | 21% |

4. Int.Rev.Code of 1954 §§ 1371–1378.

5. The transcript of the testimony reveals that the failure to elect under Subchapter S during the corporations' first tax year was due to the backlog of paperwork relating to the formation of the corporations. An election under Subchapter S must be made either in the

taxed as a Subchapter S corporation during any of the years in question.

The two corporations, Tommy and Connie Corporations, filed the required small business corporation income tax returns and the income reported was included in the individual income tax returns of all of the shareholders of each corporation for the calendar years 1960 and 1961.

The Commissioner of Internal Revenue determined that the income reported by Tommy and Connie Corporations and, after the Subchapter S election, by each minority shareholder, was taxable to T. M. Britt in his capacity as partner in the Britt Fruit Company. The Commissioner, however, recognized Thomas Britt's undivided four percent interest in the Company that his father transferred to him in 1958. Based on this determination, a deficiency was assessed against T. M. Britt for each of the years in question. The Commissioner additionally determined that the income attributable to Harold M. Britt, Inc. was taxable to Harold M. Britt in his capacity as partner in the Company.

After paying the assessed deficiency, the taxpayers filed claims for refunds alleging that the determination of additional tax liability erroneously disregarded the separate corporate entities of the Florida corporations and erroneously caused to be included in the taxpayers' individual income, the distributable share of income of each corporation from the Britt Fruit Company. The District Director disallowed the taxpayers' claims for refunds. The taxpayers then brought suits for refunds in the district court.

At the trial, the taxpayers did not dispute the fact that the corporations were formed for the purpose of providing a vehicle through which T. M. Britt and

his brother could attempt to interest both Thomas and Constance Britt to take an active part in the management and operation of the Company. Nor was there any question that the use of the corporate structure was employed to facilitate T. M. Britt's and Harold Britt's own estate planning. The taxpayers argued for the recognition of the corporations as separate taxable entities on three grounds.

First, the taxpayers argued that the activities of the corporations constituted a sufficient amount of business activity to require recognition as separate taxable entities. Second, since capital is a material income-producing factor for the Britt Fruit Company, Section 704(e)(1) of the Internal Revenue Code of 1954 [6] requires that each corporation be recognized as a partner in the Company. The taxpayers' third argument is twofold. At the time of the trial the government conceded that the interests of the minority shareholders in the corporations attributable to those shareholders should not have been taxed to T. M. Britt or Harold Britt. The taxpayers now argue that if the interest of the minority shareholders in the corporations is to be recognized, then the corporations themselves should be recognized. They specifically question how the government can acknowledge a minority interest in the Company when that minority interest was created by the transfer of stock in a nonrecognizable corporation. Alternatively, the taxpayers argue that since the government recognized the validity of the Subchapter S election for 1960 and 1961, and since there was no substantive difference in the corporations' activities between 1959, 1960, and 1961, recognition of the corporations as sep-

month before the beginning of the tax year for which an election is to be made, or in the first month of the tax year. For new corporations, the first month of the tax year does not begin until the corporation has shareholders or acquires assets or begins doing business, whichever is the earliest. Int.Rev.Code of 1954 § 1372(c). Treas.Reg. § 1.1372–2(b) (1959).

6. Section 704(e) (1) of the Internal Revenue Code of 1954 provides that:
   A person shall be recognized as a partner for purposes of this subtitle if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person.

arate taxable entities for 1959 must follow.

First, the government maintains that the level of business activity conducted by the corporations was insufficient to justify recognition of the corporations as separate taxable entities, and that a distinction must be drawn between "busyness" and "business". Second, in response to the taxpayers' second argument, the government contends that Section 704(e) (1) is not applicable since reliance upon that section preempts the question of whether the corporations are taxable as corporations by first establishing that they are taxable as partners. Third, the government contends that its concession at trial implies nothing more than that the completed gifts of stock constituted ownership in a fractional interest in the partnership similar to the interest originally conveyed to Thomas Britt.

The district court held that the corporations were not shams and that they were organized for a legitimate purpose. The corporations were disregarded, however, as separate taxable entities on the ground that they were not engaged in any business activity. The district court allowed recovery by T. M. Britt for 1960 and 1961, the years in which Tommy and Connie Corporations elected to be taxed under Subchapter S. No refund was allowed for 1959. The district court denied recovery by Harold M. Britt for each of the three years in question. We reverse and hold that the business activities of each corporation were sufficient to require recognition of the corporations as separate taxable entities for income tax purposes. Accordingly, T. M. Britt is entitled to recover the deficiency payment made for 1959 and Harold M. Britt is entitled to recover those deficiency payments for 1959, 1960, and 1961.

## II.

Judge Learned Hand brought into focus the problem of formulating a rule of law to determine whether a corporation is to be regarded as a separate taxable entity. In Procter & Gamble Co. v. Newton, S.D.N.Y.1923, 289 F. 1013, he pointed out:

If our law regarded a corporation as an association of individuals created for purposes defined in their charter, whose extent was measured as we measure that of a consensual association, like a partnership, an unincorporated society, or a criminal conspiracy, the result would be simpler. Such a corporation would be immanent in everything which was done in execution of its purposes. Or if we had the hardihood to adhere to the rigid convention of a corporation persona, in which, however empty a shell, all rights reside, and to which all duties attach, whatever the strain on our moral predilections, at least we should have a workable concept. As it is, our law has been baffled by the problem, and has wavered between the two alternatives. Since we have had no statute of uses to execute the dry use, I have no great confidence that I can pick a certain path among the cases.

289 F. at 1015. Mr. Justice Holmes in Bullen v. Wisconsin, 1916, 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830, presented the issue in a form designed to simplify analytic examination.

We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion, what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law.

240 U.S. at 630–631, 36 S.Ct. at 474.

To decide whether a particular corporation should be recognized as a separate taxable entity is a matter of where to draw Mr. Justice Holmes's line. The difficulty lies in the fact that we are constantly confronted with apparently distinguishable situations. Distinguishing cases on the basis of adventitious facts does not lead to the es-

tablishment of rules or principles very helpful to the Treasury or the taxpayer. Case, Disregard of the Corporate Entity In Federal Taxation—The Modern Approach, 30 Va.L.Rev. 398 (1944). In the end, we find ourselves with a rule always in parturition, never delivered.[7]

■ What *has* evolved from the numerous cases on the subject is the principle that the corporate entity generally will be recognized rather than disregarded for tax purposes. Only in exceptional circumstances will courts ignore the separate existence of corporations. *E. g.*, New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Burnet v. Commonwealth Improvement Co., 1932, 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; Thompson v. United States, 5 Cir. 1940, 110 F.2d 585. *See also* Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders 12 (2d ed. 1966); Kauffman, The

Concept of the Corporation as a Taxable Entity in the Multiple Corporate Area, 46 Taxes 688 (1968). But this conclusion is so general that it is not much of a guideline in any particular case.

■ More particularly, we find that for tax purposes the courts will recast the form of a transaction to prevent a violation of the spirit if not the letter of the taxing statute in two basic circumstances: (1) when the taxpayer has conducted business as if he and the corporation were one and the same, thereby ignoring the fact that in tax law he and the corporation are considered to be two separate tax entities;[8] (2) when artificial corporations have been created to contravene directly or indirectly the policies of the Internal Revenue Code. *E. g.*, Gregory v. Helvering, 1935, 293 U. S. 465, 55 S.Ct. 266, 79 L.Ed. 596.[9]

7. While the courts have continued to attempt to carve a rule as to when a corporation will be regarded as a separate taxable entity, Congress has acted in a number of instances in defining when a corporation will or will not be regarded as a separate entity for tax purposes.

Section 312(h) and 551 of the 1954 Code provide that stockholders will be taxed on gain or income realized by the corporation under certain circumstances. Sections 336 and 337 provide that if the terms of those sections are met, the corporations will not be taxed on proceeds derived from liquidations. The Code provides for disregard of the corporate entity for tax purposes in those situations where corporations are the subject of reorganizations. Int.Rev.Code of 1954, §§ 354, 355, and 361. Section 532 provides for penalty taxation on corporations that have accumulated surpluses for the purpose of "avoiding the income tax with respect to its shareholders or the shareholders of any other corporation." This provision tends to pierce the corporate veil and look through form to substance in order to protect federal revenues. Section 1501 allows certain affiliated corporations the privilege of making consolidated income and excess profit tax returns for a taxable year instead of separate returns if the corporations so elect, thus in a sense disregarding the separate legal entity of certain related corporations. Section 367

of the 1954 Code disregards the separate corporate entity of a corporation whose control is acquired by a person, persons, or another corporation for the principal purpose of evading or avoiding income taxes, by denying the income benefit otherwise derived from such acquisition. Also, the Code will not allow certain stockholders, including those owning more than fifty percent of the outstanding stock of a corporation, a deduction for losses arising from sales and exchanges of property between the individual and the corporation. Int.Rev.Code of 1954 § 267. Last, under Section 341 of the Code, the separate existence of a collapsible corporation is disregarded by treating certain corporate transactions as taxable gain to the shareholders.

8. E. g., Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; Bazley v. Commissioner of Internal Revenue, 1947, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782; Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Shaw Construction Co. v. Commissioner of Internal Revenue, 9 Cir. 1963, 323 F.2d 316, affirming 35 T.C. 1102.

9. In Gregory v. Helvering, the Court refused to recognize the existence of a corporation formed to facilitate a corporate reorganization where to recognize the corporation would directly contravene

*Gregory,* among other cases, established that the corporate entity may be disregarded when it appears that on the basis of substance versus form it is necessary to effectuate the policies of the Internal Revenue Code. (This is a protean concept that escapes a tight group.) Nevertheless, in *Gregory,* the Court clearly indicated that a taxpayer has the right to adopt any lawful form of business to conduct his business operations. 293 U.S. at 467, 55 S.Ct. 266. If however, the form employed is so evanescent as to lack economic reality, recognition as a separate taxable entity will be denied. The application of this principle indicates that a given result at the end of a straight path is not made a different result because reached by following a circuitous path. See Alpha Tank & Sheet Metal Mfg. Co. v. United States, 1953, 116 F.Supp. 721, 126 Ct. Cl. 878.

> The government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction * * *. It is command of income and its benefits which marks the real owner of property.

Higgins v. Smith, 1940, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406, 411.

■■ It was not until the Supreme Court decided Moline Properties, Inc v. Commissioner of Internal Revenue, 1943, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499, that any legal principles were established by which a judgment could be made to determine whether a corporation was to be considered a separate taxable entity.

> Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, *so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.*

319 U.S. at 438–439, 63 S.Ct. at 1134, (emphasis added). The corporation may not be disregarded if

> a bona fide intention in creating it was that the corporation itself should have some real substantial business function, or if it actually engages in business; on the other hand, the corporation may be disregarded in the absence of such an intention or activity.

Jackson v. Commissioner of Internal Revenue, 2 Cir. 1956, 233 F.2d 289, 290.

In *Moline Properties* a corporation was formed in order to protect the investments of the mortgagor's creditors. The mortgagor conveyed the property to Moline Properties, Inc. in exchange for its capital stock. This stock was pledged with the mortgagee and placed in a vot-

---

Section 112 of the Internal Revenue Code of 1928 (Section 112 is now embodied in Sections 354, 355, and 368 of the Internal Revenue Code of 1954). In looking through form to substance in order to effectuate the policies of the Internal Revenue Code, the Court found

[s]imply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. But that corporation was nothing more than a contrivance to [an] end.

293 U.S. at 469, 55 S.Ct. at 267. *See* Higgins v. Smith, 1940, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406.

This concept however was developed prior to the present income tax law. In United States v. Barwin Realty Co., E.D. N.Y.1928, 25 F.2d 1003, the court, concerned with the Corporation Tax Act of August 5, 1909, 36 Stat. 112, c. 6 § 38 stated:

Where the corporate form is used for the purpose of evading the law, this court will not permit the legal entity to be interposed to defeat justice.

25 F.2d at 1004.

ing trust. The loan was paid, and control of the corporation reverted to the mortgagor. Over a period of three years, the corporation sold its real estate holdings at a profit. The only activity conducted by the corporation was the rental of a portion of its land prior to sale. The corporation transacted no further business after the sale of the last parcel of property. The corporation kept no books of account and maintained no bank account for the deposit of the rental funds. The sole issue was whether the gain realized by the corporation should be treated as income to the corporation or to the mortgagor. After stating the test to be applied in determining when a corporation will be recognized as a separate taxable entity, the Court held the income taxable to the corporation on the ground that the corporation had engaged in sufficient business activity to require recognition. The business activities that the Court relied upon were the corporation's discharge of its mortgage obligation, the subsequent remortgaging of the property, the rental of the property and its eventual sale.

The taxpayer in Skarda v. Commissioner of Internal Revenue, 10 Cir. 1957, 250 F.2d 429, organized a corporation for the purpose of publishing a newspaper. The corporation entered into several contracts for the purchase of printing equipment and opened a bank account in its own name. The corporation hired employees and proceeded to publish a newspaper. The corporation eventually lost money and the taxpayer sought to deduct the corporation's loss on his individual tax return. The court held that the corporation possessed all the characteristics of a corporation actually carrying on business and the loss therefore must fall on the corporation and not the taxpayer.

In Hagist Ranch Inc. v. Commissioner of Internal Revenue, 7 Cir. 1961, 295 F.2d 351, the court had little difficulty in finding the requisite business activity to require corporate recognition. There, a corporation formed for the purpose of holding property in order to provide for the orderly liquidation of a decedent's estate had entered into extensive leasing arrangements as well as buying and selling of additional properties. These activities were found to be sufficient under *Moline Properties*.

This Court has had the occasion to apply the principles of *Moline Properties* in Tomlinson v. Miles, 5 Cir. 1963, 316 F.2d 710, cert. denied, 1963, 375 U.S. 828, 84 S.Ct. 71, 11 L.Ed.2d 60. There we listed the activities that the corporation had performed and concluded that that amounted to the carrying on of business by the corporation.

[W]e think that it cannot be gainsaid that what was done by Milspinmar Corporation in the acquisition and recording of title to the land in question, the surveying of the land, the paying of taxes on it, the searching of titles, the sale of timber from it, the negotiation of contracts for its sale in different parcels, its actual sale, its receipt of purchase money security deeds, its release of these security deeds and its satisfaction of these deeds of record, together with the other activities naturally flowing from these transactions, such as the reacquisition of a tract from one purchaser, the acquisition of an additional tract in order to clear title, are the "equivalent of business activity," and amount to "the carrying on of business by the corporation."

316 F.2d at 714.

*Skarda, Hagist,* and *Tomlinson* emphasize the degree of business activity, but a determination whether a corporation is to be considered as doing business is not necessarily dependent upon the quantum of business. Herbert v. Riddell, S.D.Cal.1952, 103 F.Supp. 369.

[T]o be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term "corporation" will be interpreted to mean a *corporation which does some "business" in the ordinary*

*meaning*; and that escaping taxation is not "business" in the ordinary meaning. (Emphasis added.)

National Investors Corporation v. Hoey, 2 Cir. 1944, 144 F.2d 466, 468.

We turn now to other decisions which have considered the degree of business activity required of a separate tax entity. Paymer v. Commissioner of Internal Revenue, 2 Cir. 1945, 150 F.2d 334, reflects judicial reluctance to disregard the corporate entity where a corporation has conducted some "business" within the meaning of that term as announced in *National Investors*. In *Paymer*, two corporations were formed to serve as a deterrent to creditors of the individual taxpayers. The corporations were intended to have no other function than to hold title to certain parcels of real property. The leases on the property were never conveyed to the corporations. The taxpayers managed the real property and all rental money that was collected was deposited in the taxpayers' individual bank accounts. While one of the corporations continued to remain dormant, it became necessary for the other corporation to execute a loan. As security for the loan, the corporation assigned its rights in the real property to which it held title. The taxpayers sought to include the income from the property held by the two corporations in their own tax return. The court held that while one of the corporations was at all times a "passive dummy", the other corporation was active enough to justify holding that it did engage in business.

> Though Raymep was organized solely to deter creditors of one of the partners, it apparently was impossible or impracticable to use it solely for that purpose when it became necessary or desirable to secure the * * * loan in a substantial amount.

150 F.2d at 336–337.

In Given v. Commissioner of Internal Revenue, 8 Cir. 1956, 238 F.2d 579, a real estate venture was entered into by a group of individuals in the form of a corporation. The corporation held title to the property. Expenditures for repairs and improvements upon the property were paid by checks drawn on the corporation's account. The only instruments executed by the corporation were the rental agreements between it and the tenants. In order to avoid income and excessive profit taxes for the corporation and transferee liability upon the taxpayer, the taxpayer argued that the corporation was simply an agent and a conduit for the stockholders. The court rejected this contention by observing that the commercial activities with third parties reflected normal corporate activities and functions and the incurring of legal obligations and responsibilities would not normally be permitted to attend a mere agency or conduit status. 238 F.2d at 582.[10]

The Second Circuit in Commissioner of Internal Revenue v. State-Adams Corp., 2 Cir. 1960, 283 F.2d 395, cert. denied, 1961, 365 U.S. 844, 81 S.Ct. 802, 5 L.Ed.2d 809, reversed a decision of the Tax Court which disregarded the separate existence of the corporation. There, to facilitate the devolution from the life tenant to numerous remaindermen, title to property which had been leased on long-term lease to a department store was transferred to a corporation newly formed for that purpose in exchange for its capital stock. At the same time, the long-term lease was assigned to the corporation in return for its promissory note payable to the life tenant, the interest on the note being equivalent to the amount of rent received from the department store. On the death of the life tenant new certificates of stock and new promissory notes were issued in pro rata amounts to the remaindermen. At no time did the corporation have a bank account or maintain an office other than the required statutory one. Its only expense consisted of bank service fees, legal fees and franchise taxes. Since the interest payments were intended to exhaust the rental income, the

---

10. *See* Perry R. Bass, 1969, 50 T.C. 595; *see also* Sam Siegel, 1966, 45 T.C. 566.

corporation took appropriate steps to refund the debt by notes at a higher interest rate when the rental income increased pursuant to the terms of the lease. Occasionally the amount paid out as interest exceeded the amount due on the notes. The corporation's only activities were the holding of the lease and title to the property and the taking of steps necessary to continue its corporate existence. The corporation did not engage in any activity not connected with the leased property. In 1951, following its practice since incorporation in 1933, the corporation reported its rental income from which it deducted a small amount for expenses and the remainder as interest paid on the notes—leaving no taxable income. Alleging that the interest was in reality a dividend and therefore not deductible, the Commissioner determined a deficiency in the corporation's income and excess profits tax for 1951. The court held that a corporation formed to facilitate the devolution of property, which merely holds title, collects rents from lessees and distributes the income has engaged in business and will be taxed as a separate entity. See also Gregg Co. of Delaware v. Commissioner of Internal Revenue, 2 Cir., 1956, 239 F.2d 498, cert. denied, 1957, 353 U.S. 946, 77 S.Ct. 825, 1 L.Ed.2d 856.

■ These cases turn on the facts. Business activity is required for recognition of the corporation as a separate taxable entity; the activity may be minimal.

■ In urging recognition of the three corporations for federal tax purposes here, the taxpayers point to those activities which were necessary to acquire *de jure* corporate status under Florida law. The fact that a state has conferred a label of "corporation" on a business organization should not *per se* control its status for federal tax purposes. Local law sets the activities that are necessary to bring an organization within the definition of a corporation for purposes of determining such matters as the legal relationships of the members of the organization among themselves and with the public at large and the interests of the members of the organization in its assets. These factors have a bearing on the entity's federal tax status. We agree with the government, however, that those acts occasioned by the requirements under Florida law to achieve corporate status should not alone be equated with the carrying on of business. Shaw Construction Co. v. Commissioner of Internal Revenue, 9 Cir. 1963, 323 F.2d 316; O'Neill v. Commissioner of Internal Revenue, 9 Cir. 1959, 271 F.2d 44; American Gas and Elec. Co. v. Commissioner of Internal Revenue, 2 Cir. 1936, 85 F.2d 527.

The government argues that the activities relied upon by the taxpayers are "rather inconsequential activities", and should be discounted in light of those cases which demonstrate a high level of business activity. As we earlier indicated, we do not believe that recognition necessarily depends upon the quantum of business conducted.

■ Here, the corporations have always been considered and treated as the owners of interests in the Britt Fruit Company. The primary creditor of the Company has required the joinder of each corporation in the execution of all promissory notes and mortgages affecting the Britt Fruit Company property. By requiring the corporation's signatures, the Credit Association has insured itself of a valid lien on all of the mortgaged property of the Company. Stock in the Credit Association has continuously been held in the individual names of the corporations. Dividends have been paid to the corporations as individuals. All income and disbursements have been made in the corporate name. The fact that the corporations have operated their business property through the medium of a partnership does not prevent us from concluding that the corporations have engaged in business. *See generally* Perry R. Bass, 1968, 50 T.C. 595; Sam Siegel, 1966, 45 T.C. 566.

In view of *Moline Properties* and its progeny, and applying *National Investors* to the facts now before us, we conclude

that the "business activities" of the corporations here, required recognition of the corporations as separate taxable entities.

The decision of the District court is reversed with directions to enter final judgment for the taxpayers.

TUTTLE, Circuit Judge (concurring specially).

With deference to the majority of the court, I am impelled to write this short separate concurrence. This results from the fact that were it not for the fact that the three corporations set up by the two Britt brothers were themselves actual partners in the Britt Fruit Company, I would find the activities of these corporations much too slight to meet the standards which the majority adopts as what is required for a corporate body "to be a separate jural person for purposes of taxation." That is to say, "it must *engage in some industrial, commercial, or other activity besides avoiding taxation*: in other words, that the term 'corporation' will be interpreted to mean a *corporation which does some 'business'* in the ordinary meaning; and that escaping taxation is not 'business' in the ordinary meaning." National Investors v. Hoey, 2 Cir., 1944, 144 F.2d 466, 468. (Emphasis added.)

Here all the corporations really did was those things that were necessary for anyone who stood in the shoes of the original owners of the partnership interests in the Britt Fruit Company. Of course, they did the acts that were necessary to maintain the corporate existence and their accounting, once they were set up, but this of itself does not amount to "business," in the concept which any of us are here using.

The turning point with me is that partners of an active business partnership not only own the business but they engage in operating the business. This is true even though they operate it by hiring a manager, and this is true even though the manager be one of the partners who is paid additional compensation for his management services. This follows because under ordinary partnership concepts, each partner has his say in the running of the partnership business, and apparently, since there was no formal partnership agreement between any of these partners, as we are told by the stipulation in the case, the partnership could be dissolved at the behest of any partner. This means that any partner, including these two small corporations, each owning 14% of what formerly belonged to T. M. Britt, or 21% of what formerly belonged to Harold M. Britt, did legally, even though possibly not in fact, engage in the business of operating the partnership known as Britt Fruit Company.

I feel it necessary to point to this distinction, because it would seem to me that this case should not be a precedent for the proposition that the setting up of these corporate structures would be recognized as anything other than the alter-egos of the original owners of the interests, if the corporations were not the active partners in an operating fruit and orchard business.