COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

PFAUDLER INTER–AMERICAN CORPORATION, Respondent.

Nos. 277, 278, Dockets 28459, 28460.

United States Court of Appeals
Second Circuit.

Argued Feb. 13, 1964.

Decided April 13, 1964.

Harold C. Wilkenfeld, Dept. of Justice, Washington, D. C. (John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson and Martin B. Cowan, Dept. of Justice, Washington, D. C., on the brief), for petitioner.

John C. Reid, Washington, D. C. (Ivins, Phillips & Barker, Washington, D. C., and Scott Stewart, Jr., Nixon, Hargrave, Devans & Doyle, Rochester, N. Y., on the brief), for respondent.

Before LUMBARD, Chief Judge, WATERMAN and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge:

■■ The sole question presented on this appeal is whether the taxpayer, Pfaudler Inter-American Corporation, qualifies under the Internal Revenue Codes of 1939 and 1954 as a Western Hemisphere trade corporation so as to be entitled to the credit established in § 26(i) [1] of the 1939 Code, the exemption from excess profits tax granted by § 454 (f) [2] of the 1939 Code, and the deduction granted in § 922 [3] of the 1954 Code. The

---

1. Section 26 of the 1939 Code provides:
"CREDITS OF CORPORATIONS.

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

"(i) *Western Hemisphere Trade Corporations.*—In the case of a western hemisphere trade corporation (as defined in section 109)—

\* \* \* \* \* \*

"(2) *Taxable years beginning after March 31, 1951, and before April 1, 1954.*—In the case of a taxable year beginning after March 31, 1951, and before April 1, 1954, an amount equal to 27 per centum of its normal-tax net income computed without regard to the credit provided in this subsection."

2. Section 454 of the 1939 Code provides:
"EXEMPT CORPORATIONS.

"The following corporations, except a member of an affiliated group of corporations filing a consolidated return under section 141, shall be exempt from the tax imposed by this subchapter: \* \* \*

"(f) Domestic corporations satisfying the following conditions:

"(1) If 95 per centum or more of the gross income of such domestic corpora-

tion for the three-year period immediately preceding the close of the taxable year (or for such part of such period during which the corporation was in existence) was derived from sources other than sources within the United States; and

"(2) If 50 per centum or more of its gross income for such period or such part thereof was derived from the active conduct of a trade or business."

3. Section 922 of the 1954 Code provides:
"SPECIAL DEDUCTION.

"In the case of a Western Hemisphere trade corporation there shall be allowed as a deduction in computing taxable income an amount computed as follows—

"(1) First determine the taxable income of such corporation computed without regard to this section.

"(2) Then multiply the amount determined under paragraph (1) by the fraction—

"(A) the numerator of which is 14 percent, and

"(B) the denominator of which is that percentage which equals the sum of the normal tax rate and the surtax rate for the taxable year prescribed by section 11."

Commissioner here petitions for review of a decision of the Tax Court which resolved this question in the affirmative and held that there were no deficiencies in income tax due from the taxpayer for fiscal years ending on May 31 in 1954, 1955, 1956 and 1957, the period from June 1 to December 31, 1957, and the calendar year 1958. Jurisdiction lies in this case by reason of § 7482 of the 1954 Code because the taxpayer's income tax returns for each of the taxable periods here involved were filed with the District Director of Internal Revenue at Buffalo, New York. We affirm the judgment of the Tax Court.

Pfaudler is a wholly-owned subsidiary of Pfaudler Permutit, Inc. (the parent), which is engaged in the manufacture and sale of equipment for breweries, dairies and other industrial plants. In 1953 Pfaudler was organized as a New York corporation with the avowed purpose of qualifying as a Western Hemisphere trade corporation to obtain the concomitant tax benefits. Under an agreement executed at that time, the parent granted Pfaudler the exclusive right to sell the parent's products in countries of the Western Hemisphere other than the United States.

Thereafter Pfaudler purchased merchandise exclusively from the parent and maintained no supply of merchandise or other permanent place of business outside of the United States. Pfaudler had no employees located in foreign countries, with the exception of one salesman in Canada after June 1, 1957. It conducted business through independent sales representatives in the foreign countries of the Western Hemisphere who solicited orders and forwarded them to Pfaudler's office in Rochester, New York. Agents in foreign countries endorsed the bills of lading and insurance certificates and delivered them to Pfaudler's foreign customers. In some instances the sales representatives also acted as endorsing agents.

Title to the goods passed from the parent to Pfaudler when they were shipped from the parent's factory or warehouse. The printed notice of acceptance, issued by Pfaudler to its customers upon receipt of their orders, contained a standard provision stating that title to, possession of, and control over the merchandise—as well as the risk of loss or damage—remained with Pfaudler until arrival of the merchandise at the stipulated point of destination in the foreign country.[4]

Section 109 of the 1939 Code and § 921 of the 1954 Code in almost identical terms establish three qualifications for a Western Hemisphere trade corporation: that it do all of its business "in any country or countries in North, Central, or South America, or in the West Indies"; that it derive 95 per cent or more of its gross income for the three years preceding the taxable year from sources without the United States; and that it derive 90 per cent or more of its gross income for such period from the active conduct of a trade or business.

The Commissioner launches a two-pronged assault on the Tax Court's finding that Pfaudler satisfied these qualifications: first, he argues that the statute should be construed as applicable only to corporations whose trade or business is conducted primarily outside the United States, a condition which Pfaudler failed to meet, and second, he argues that under the "substance of the sale" test, which he claims should be applied, the taxpayer did not derive 95 per cent of its gross income from sources without the United States.

We see no cause to depart from the precedent established by the five courts —two courts of appeals, one district court, the Court of Claims, and the Tax Court—which have considered and rejected essentially the same claims advanced here by the Commissioner. Frank

---

4. A more detailed exposition of the business operation which Pfaudler conducted is set out in the opinion of the Tax Court, 22 CCH Tax Ct.Rep.Dec. 26,071 (M) (April 17, 1963).

v. International Canadian Corp., 308 F.2d 520 (9 Cir. 1962), affirming 61–1 USTC ¶9405 (W.D.Wash.1961); A. P. Green Export Co. v. United States, 284 F.2d 383 (Ct.Cl.1960); Barber-Greene Americas, Inc., 35 T.C. 365 (1961); Pan American Eutectic Welding Alloys Co., 36 T.C. 284 (1961); Babson Bros. Export Co., 22 CCH Tax Ct.Mem. 677 (1963). Most recently, the United States Court of Appeals for the Seventh Circuit ruled that a corporation doing business in substantially the same manner as Pfaudler qualified as a Western Hemisphere trade corporation. Commissioner of Internal Revenue v. Hammond Organ Western Export Corp., 327 F.2d 964 (7 Cir. 1963).

■ The Commissioner's contention that Pfaudler is disqualified as a Western Hemisphere trade corporation because the active conduct of its business is carried on in the United States ignores the very statutory language which we must apply. The statutory provision clearly defines a Western Hemisphere trade corporation—one which does all of its business "in any country or countries in North, Central, or South America, or in the West Indies"—to include a corporation which has its place of business in the United States. There is thus no warrant for delving into the legislative history and other documentation which the Commissioner offers and which, in any event, is at best inconclusive on the point in issue. Neither, as the Commissioner suggests, would it be irrational for Congress to grant tax benefits to corporations which compete primarily with foreign business corporations without having plants abroad as well as to those that do.

■ The Commissioner's alternative contention that the taxpayer did not derive 95 per cent of its income from sources without the United States is no more persuasive. Section 119(e) of the 1939 Code and § 862(a) (6) of the 1954 Code provide that income derived from the purchase of personal property within the United States and its sale without the United States shall be treated as income from sources without the United States. The Commissioner would have us depart from the established rule that a sale is to be deemed consummated in the country where title and the other incidents of ownership pass to the vendee and substitute in its place the "substance of the sale" test which looks "to the realistic commercial and economic factors in determining where the tax-meaningful incidence of a sale takes place." Here, the Commissioner contends, only incidental business activities occurred outside the United States and therefore the United States was the country in which the sales took place and consequently the source of the taxpayer's income. We disagree.

■ We believe in this case that it is better to apply the "passage of title" test, which is supported by much precedent.[5] This rule provides a measure of certainty upon which corporations may plan their contracts, and indeed their business operations, with an eye to the tax benefits attendant upon qualifying as a Western Hemisphere trade corporation. By contrast, the "substance of the sale" test set out in Treasury Regulation § 1.861–7 (1957)—which provides that "all factors of the transaction, such as negotiations, the execution of the agreement, the location of the property, and the place of payment, will be considered, and the sale will be treated as having been consummated at the place where the substance of the sale occurred"—is vague and uncertain. See United States v. Balanovski, 236 F.2d 298 (2 Cir. 1956). The Commissioner's reliance on the 1957 Treasury Regulation is misplaced, inasmuch as the regulation applies solely to cases "in which the sales transaction is arranged in a particular manner for the primary purpose of tax avoidance." It is not tax avoidance in this sense to take

5. See Frank v. International Canadian Corp., supra; Commissioner v. Hammond Organ Western Export Corp., supra; A. P. Green Export Co. v. United States, supra; Barber-Greene Americas, Inc., supra; Pan American Eutectic Welding Alloys Co., supra; Babson Bros. Export Co., supra.

advantage of a provision of law especially enacted to favor those who do business in a certain area of the world and who otherwise meet the statutory conditions as Pfaudler does. It is clear that Pfaudler's sales were no mere shams; retention of title carried with it the risk of loss or damage to the goods prior to ultimate delivery as well as the benefits linked to reservation of control over the goods while in transit.

The decision of the Tax Court is accordingly affirmed.