**BROWN, RUDNICK, FREED & GESMER**
**vs.**
**BOARD OF ASSESSORS OF THE CITY OF BOSTON**

Nos. X-216921, 103754, 109718, 116479

Appellate Tax Board
Trial Court of the
Commonwealth of Massachusetts

**February 4, 1982**

**Hirsh Freed, Esq.,** counsel for the appellant.
**Peter Antell, Esq.,** counsel for the appellee.

These are appeals from the refusal of the appellee to abate personal property taxes assessed to the appellants for fiscal years 1978, 1979, 1980 and 1981. Docket No. X-216921 is under the informal procedure; the others are under the formal procedure.

Our decision is for the appellee.

These findings of fact and report are made on the Board's own motion.

**FINDINGS OF FACT AND REPORT**

The appellants are partners in a partnership firm of attorneys with offices at 85 Devonshire Street, Boston, as of January 1, 1977 and January 1, 1978, and at One Federal Street, Boston, as of January 1, 1979 and January 1, 1980.

On December 11, 1975, the partnership organized a corporation under G.L.c. 156B for the stated purpose of engaging in the business of leasing personal property. According the the Articles of Organization of the corporation

(filed with the Secretary of the Commonwealth on December 12, 1975), the name of the corporation was Briefing, Inc. and the following partners were named as incorporators, officers and directors, namely:

| Title | |
|---|---|
| Incorporator(s) | Jack H. Calechman |
| President | Donald E. Paulson |
| Treasurer | Rudolph Kass |
| Clerk | Jack H. Calechman |
| Directors | Donald E. Paulson, Rudolph Kass and Jack H. Calechman |

From the time of its organization to the present time, the officers and directors of the corporation have also been partners in the partnership firm.

After the formation of the corporation, the partnership transferred title to all its personal property to the corporation in consideration of the issuance of all the shares of capital stock of the Corporation to the partnership and a promissory note in the principal sum of $65,000. The partnership has been the only stockholder in the corporation. The personal property thus transferred included business and office equipment, furniture, furnishings, books, publications and periodicals. Said personal property was inventoried and leased back to the partnership under the terms of a lease providing for the payment of lease rent of $240,000 per annum ($20,000 per month) payable from the partnership to the corporation. The term of the lease was for one year, thereafter continuing from year to year unless terminated by either party upon giving a ninety-day notice of termination prior to the expiration of the current one-year period.

The lease has not been terminated and has continued in effect in all years in question. Additional equipment has been added from time to time, but there have been no amendments to the lease, so that some equipment is covered by the terms of the lease and some of the most recently acquired equipment is on a rental basis.

There was evidence and the Board finds that such additional equipment has been purchased to meet the growth needs of the partnership, but the corporation, although empowered to do so, has not engaged in leasing personal property of the kind and nature it has leased to the partnership to any other person(s), firms or organizations from the time of its inception to the present time. The growth needs of the partnership are indicated by the increase in the number of partners and other personnel from thirty attorneys and a total work force of about sixty persons in 1975 to more than fifty attorneys and a total organization of about 115 persons in fiscal year 1981.

The partnership does not rely upon the corporation to supply all its equipment; various types of machines and equipment (i.e. copy machines, word processing machines, accountant equipment, etc.) are leased by the partnership from companies such as I.B.M., Xerox, Legal Data Systems, Digital Equipment, and others.

Since the formation of the corporation, the partnership has claimed it owns no personal property of any kind; that even the supplies used in the course of its business are furnished by the corporation.

The corporation has filed corporate excise returns with the Commonwealth for the years in question and has paid the excises shown to be due thereon, as a tangible property corporation, as follows:

| Calendar Year | Excise Due and Paid |
|---|---|
| 1977 | $ 507.35 |
| 1978 | 916.01 |
| 1979 | 1,552.00 |
| 1980 (Exclusive of penalty) | 8,770.00 |

The explanation for the increase in the corporate excise tax in the years 1979 and 1980 over the previous years was given by Stanley Waldstein, a witness called by the appellants. Mr. Waldstein is a C.P.A., a partner in the C.P.A. firm of Tobin & Waldstein, the accountants for the appellants and for the corporation, and the person who prepared the corporate excise return for the corporation for 1980. Mr. Waldstein testified that the profit increased in 1980 mainly because the ac-

celerated depreciation taken by the corporation on its acquisitions, the bulk of which were purchased at the time the partnership moved from Devonshire Street to Federal Street in 1978, had been largely used up, thus increasing the taxable profit of the corporation. According to Mr. Waldstein, the original cost of the furniture and fixtures against which accelerated depreciation had been taken was about $500,000. Law books are not treated as equipment and are written off when acquired, rather than to depreciate them over a three-year period. He further testified that the $240,000 lease rent is for the privilege of using the equipment and the library books and other supplies which, according to this witness, are "disposable items that you don't see on the balance sheet." Also, according to him, whenever additional equipment and supplies are purchased by the corporation and furnished to the partnership, the rent is adjusted upwards under a formula which is used to determine the amount of the rental charge.

In each year since 1976, the partnership has filed a statutory Form of List with the Assessors of the City of Boston, indicating that the partnership owned no personal property subject to local taxation. The City has issued a tax bill to the partnership in each such year in the following amounts, which amounts were paid on the dates indicated:

| Year | Assessed Value | Tax Amount | Payment Dates |
|---|---|---|---|
| 1977 | $38,800 | $ 7,631.96 | Nov. 9, 1977 |
| 1978 | 38,000 | 9,812.52 | Nov. 1, 1977 |
| | | | May 1, 1978 |
| 1979 | 38,800 | 9,812.52 | Oct. 27, 1978 |
| | | | Mar. 22, 1979 |
| 1980 | 38,000 | 9,812.52 | Oct. 25, 1979 |
| | | | Apr. 28, 1980 |
| 1981 | 40,000 | 10,908.00 | Nov. 5, 1980 |
| | | | May 1, 1981 |

| Year | Date of Application | Date of Appeal | Docket No. |
|---|---|---|---|
| 1977 | Oct. 29, 1976 | - | -. |
| 1978 | Oct. 26, 1977 | Mar. 9, 1978 | X-216921 |
| 1979 | Oct. 27, 1978 | Apr. 12, 1979 | 103754 |
| 1980 | Oct. 26, 1979 | Apr. 2, 1980 | 109718 |
| 1981 | Nov. 17, 1980 | Apr. 6, 1981 | 116479 |

In each of the above-enumerated years, the partnership has filed an application for abatement with the appellee, and has filed appeals with this Board based on the failure of the appellee to take action on those abatement applications. The applications and appeals were timely filed as follows:

Space for chart which will not fit on 15 picas.

### Subsidiary Findings

The Board finds that the only activity engaged in by the corporation is the purchase of business machines, equipment and supplies and the leasing of such personal property to the partnership which organized the corporation, holds all of its shares of capital stock, and the directors and officers of which are also partners in the partnership.

The only income received by the corporation is in the form of rent under the terms of a lease, but the lease in not an arm's-length transaction, as is admitted by the appellants in their reply memorandum.

The amount and times of payment of the lease rent is within the control of the partnership.

Any increases in the amount of the rental payments is attributable to the purchase and the lease of additional equip-

ment by the corporation to the partnership; but the acquisition of such additional equipment is for the purpose of keeping pace with the growth needs of the partnership.

The original inventory of the corporation consisted of the personal property owned by the corporation at the time the corporation was formed, which personal property was then transferred by the partnership to the corporation.

There was evidence and the Board finds that the corporation had never solicited or attempted to solicit any new business from persons or firms unrelated to the partnership.

The business address of the corporation was the same as that of the partnership, first at Devonshire Street and later at One Federal Street, but there was no evidence that the business of the corporation was separated physically or otherwise from the business of the partnership at the shared premises, or that the corporation had its own offices, furniture, furnishings or office equipment, or that it had its own telephone or utilities.

There was no evidence as to the number of employees, if any, of the corporation or of their duties and salaries. We note that the corporation excise returns submitted as exhibits for the years 1976, 1977, 1978 and 1979 show that the corporation reported under Question No. 3 it had no employees in Massachusetts or elsewhere, and for the year 1980 it reported "all" its employees were in Massachusetts; yet there was no evidence as to the actual number of employees, their duties or salaries for that year either.

There was no evidence as to the income and expenses of the corporation or of its gains and losses, if any, in the years in question.

The evidence that it was always open to the corporation to engage in the business of leasing tangible personal property to others besides the partnership and that such leasing was given consideration from time to time does not in and of itself establish that the corporation was operated as a business enterprise;

especially since there also was evidence that no action was ever taken to accomplish that purpose.

Excise taxes were paid to the Commonwealth by the corporation but it is readily admitted by the appellants that such excise taxes amount to less than would have been assessable under local property taxes on the subject personal property in the years in question.

Although excise paid for 1980 is substantially higher than in the preceding years, the increase is attributable to the accelerated depreciation taken in the earlier years, thus leaving less depreciation remaining to be taken in 1980, and not because of any increase in income or in business activities.

Increases in the lease rent, if any, are attributable to the purchase and lease of additional equipment to the partnership to meet the growth needs of the partnership.

### Ultimate Findings

On the basis of the above general and subsidiary findings, and for the reasons set forth in our Opinion below, the Board's ultimate finding is that the corporation's activities were not undertaken for the purpose of profit or gain; wherefore, the Corporation was not engaged in "business" and should not be afforded recognition as a viable business entity for purpose of exemption under G.L.c. 59, § 5, Sixteenth (2) which reads: "In the case of (a) domestic business corporation...all property owned by such corporation..." (emphasis supplied)

In these circumstances, the partnership was properly assessed for the local property taxes involved in these appeals.

Since there was no evidence of value, the fair cash value of the property is not less than the assessed values, in our judgment.

### OPINION

In reaching our ultimate finding that the corporation is not engaged in "business," and therefore not recognizable as a viable business entity for purposes of local taxation, we have been guided by the principles set forth in

**Whipple v. Commissioner of Corp's and Tax'n,** 263 Mass. 476. There an attorney who also operated a farm was held to be entitled to deduct from his professional income the losses sustained in his farming activities, under G.L.c. 62, §§ 5 and 6, as then in effect. The critical question was whether the taxpayer in operating the farm as described in the evidence and in the findings of fact was engaged in "business" as that word is used in the taxing statute. At pages 485-486 of the opinion of the court it was said:

> " 'Business' is a word of large signification and is not susceptible of exact definition applicable to all cases. When the purpose of the statutes taxing income is considered, the word 'business,' as used in the section relating to the deduction of expenses, must be held to refer to an activity which occupies the time, attention and labor of men for the purpose of livelihood, profit or gain."

On the facts of that case, it was held that in operating the farm the taxpayer was engaged in "business" and entitled to a deduction for his farm losses.

The Board is of opinion that the definition of the word "business" as referring to an activity undertaken for the purpose of gain or profit, and as applied in the **Whipple** case, **supra,** is appropriate in the instant appeals. Here, however, the evidence and the facts found by the Board tend to establish that the activities of the corporation cannot be said to have been undertaken for the purpose of gain or profit, wherefore, it should not be recognized as a viable business corporation under the statutes pertaining to local taxation.

**New England Mut. Life Ins. Co. v. Boston,** 321 Mass. 683, relied upon by the appellants, is not in point. There the issue was whether certain electric bookkeeping and accounting machines manufactured and leased by out-of-state corporations to the plaintiffs and others interested in hiring it retained its character as "stock in trade" while in the possession of the lessees, so as to be exempt from local taxation as machinery used in the conduct of the business which is "stock in trade," under G.L.c. 59, § 5, Sixteenth. In the instant appeals, we have determined that the corporation is not engaged in doing business of such a nature as to be afforded recognition as a viable taxable entity, wherefore, we do not even reach the question of whether the personal property which is the subject matter of these appeals is the "stock in trade" of the Corporation.

In the briefs and memoranda of law, both parties cite a number of federal cases which have arisen in the field of taxation. Such cases, as well as other federal cases found by the Board, have some bearing - but in our opinion are not decisive - on the issue involved in the instant appeals. As presented in said federal cases, the question is one of substance as opposed to form; that is, whether a corporation seeking recognition as a taxable entity is in fact and in substance as well as in form a viable business enterprise.

A summary of the principles applied in such cases is set forth in **Aldon Homes, Inc. v. Commissioner of Internal Revenue,** 33 T.C. 582 (1959). At pages 596-597, it was said:

> "Respondent's first contention raises the familiar problem of form versus substance. It is axiomatic that taxpayers have the right to mold business transactions in such a manner as to minimize the incidence of taxation, for no taxpayer is obligated to pay more tax than the law demands of him. **United States v. Isham,** 84 U.S. 496; **Gregory v. Helvering,** 293 U.S. 465; **United States v. Cumberland Public Service Co.,** 338 U.S. 451.
>
> In **Higgins v. Smith,** 308 U.S. 473, the Supreme Court, although recognizing that '(a) taxpayer is free to adopt such organization for his affairs as he may choose,' nevertheless stated:
>
> On the other hand, the Govern-

ment may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purpose of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property. (Emphasis supplied.)

In **National Investors Corp. v. Hoey,** (C.A.2) 144 F. 2D 466,468, Judge Learned Hand Pointed out that:

to be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term 'corporation' will be interpreted to mean a corporation which does some 'business' in the ordinary meaning; and that escaping taxation is not 'business' in the ordinary meaning.

In **Commissioner v. Court Holding Co.,** 324 U.S. 331, 334, the Supreme Court stated:

The incidence of taxation depends upon the substance of a transaction.***

To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress.

As was earlier stated by the Supreme Court in **Gregory v. Helvering,** supra, 'To hold otherwise would be to exalt artifice above reality, and to deprive the statutory provisions in question of all serious purpose.'

The above cases make it clear that a taxpayer may adopt any form he desires for the conduct of his business and that form cannot be ignored merely because it results in a tax saving. However, to be afforded recognition the form the taxpayer chooses must be a viable business entity, that is, it must have been formed for a substantive business activity. **Moline Properties, Inc. v. Commissioner,** 319 U.S. 436; **Jackson v. Commissioner,** (C.A. 2, 1956) 233 F. 2d 289. Escaping taxation is not a substantive business activity. **National Carbide Corp. v. Commissioner,** 336 U.S. 422, footnote 20, citing **National Investors Corp. v. Hoey,** supra."

See also, **Shaw Construction Company, v. Commissioner of Internal Revenue,** 323 F. 2d 316.

The principles announced by the above cases make it clear that the motive of the taxpayer in forming the corporation to decrease the amount of what otherwise would be his taxes (or altogether avoided) is to be disregarded; the question for determination is whether the corporation is in fact and in substance what it appears to be in form. If so, the corporation is to be afforded recognition as a viable business entity and that form cannot be ignored merely because it results in a substantial tax saving.

The application of the above-discussed federal principles to the evidence and our Findings in the instant appeals nevertheless results in the conclusion, in our view, that while the corporation has the form, it does not have the substance of a viable business enterprise. It cannot be said to be engaged in the "business' of leasing personal property in the ordinary

meaning, that is, for profit or gain.

Also considered as favorable by the appellants are the following federal cases: **A.P. Green Export Company v. United States,** 284 F. 2d 383; **Commissioner of Internal Revenue v. Hammond Organ Western Export Corporation,** 327 F. 2d 964; **Commissioner of Internal Revenue v. Pfauldler Inter-American Corporation,** 330 F. 2d 471. The issue in those cases was whether the taxpayer qualified as a Western Hemisphere Trade Corporation under the pertinent provisions of the Internal Revenue Codes of 1939 and 1954, so as to be eligible for certain tax benefits. In each, the taxpayer was a corporation and a wholly-owned subsidiary of a parent corporation. In each, the subsidiary corporation was organized so as to qualify as a Western Hemisphere Trade Corporation and thereby obtain such tax benefits. In each, the taxpayer purchased the products manufactured by its parent and sold them to various unaffiliated customers in the Western Hemisphere, although in **A.P. Green Export Company, supra,** the products of the parent company were sold to another fully-owned subsidiary of the parent company as well as to unaffiliated companies. But also, in each, it was recognized that the subsidiaries were in fact doing what they were organized to do; that is, in form and in substance they were business organizations and carrying on substantial business activities for profit, not merely existing for the purpose of obtaining tax benefits. The subsidiaries, then, had a real commercial purpose apart from the expectant tax consequences.

In our opinion, the operations of Briefing, Inc. do not meet the above-stated requirements for a viable business entity conducted for gain or profit; wherefore, it does not merit recognition as a taxable entity.

Our Decision for the appellee is promulgated herewith.

APPELLATE TAX BOARD
By John P. Mulvihill, Chairman

A true copy
Attest: **Richard B. Willis, Clerk of the Board**